[No. A062377. First Dist., Div. Five. Aug. 31, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
TOMMIE LEE OWENS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to rules 976 and 976.1 of the California Rules of Court, this opinion is certified for publication except for parts I, II, III, V and VI.

**COUNSEL**

Ozro William Childs, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Catherine A. Rivlin and Clifford K. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HANING, J.**—Tommie Lee Owens appeals his conviction by jury trial of continuous sexual abuse of a child. (Pen. Code, § 288.5.)[1] He contends the trial court committed instructional and evidentiary error and that the verdicts are inconsistent.

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

FACTS

Jana G. was 11 years old at the time of trial. Her mother, Julia B., married appellant in 1987 and Jana referred to him as "Dad." The family lived in Dixon, Redding, Sacramento and at two different locations in Vacaville. In Vacaville appellant, Jana, her mother, grandmother and two brothers lived together from November 1989 until February 1991, when appellant moved out.

Jana testified that appellant first touched her "private parts" shortly after appellant and her mother were married, when she was seven years old. He continued to do so when they lived in Redding, Sacramento and Vacaville. The acts included rubbing her bare or clothed "bottom," inserting his finger in her "bottom," and rubbing, licking and inserting his finger in her vagina. She estimated that he rubbed her vagina more than 10 times. If Jana's brothers or grandmother were home, these acts would take place in appellant's locked bedroom. Otherwise, they occurred in Jana's bedroom or on the living room couch. The incidents sometimes lasted 45 minutes. Sometimes while touching her appellant would ask, "Are you Daddy's girl[,]" or ask if she was going to "tell on him[.]" On other occasions he would "make normal conversation." About five or six times he told her that if she told anyone "he would hurt [her] or someone else." She had seen him become violent with other family members.

Jana also testified that when she was three to five years old, "Rick," her stepfather prior to appellant, used to rub her vagina "too hard" with his fingers while bathing her.

After appellant moved out, Jana saw a television commercial about sexual abuse and told her grandmother about appellant's conduct. Prior to that time she was afraid to tell anyone because she had seen appellant push her grandmother into a closet and hurt her, and he had spanked Jana with a leather belt, leaving marks. Jana told her mother after telling her grandmother.

Jana's grandmother testified that in April 1991 Jana told her that appellant had "touched her . . . like he shouldn't have touched her, [and] that she didn't feel good about it." Shortly thereafter Jana told her mother that appellant had molested her, and her mother contacted the police. Her mother told the police that Jana said the molestation had gone on for approximately one year.

Officer Steven Hosking, Vacaville child abuse investigator, testified that Jana told him she was first sexually abused by appellant when they resided

in Sacramento, and thereafter in Vacaville. She told Hosking appellant touched her buttocks and vulva, penetrated her vagina and anus, and touched her over and under her clothing. She recalled two specific incidents during the relevant time period. After police unsuccessfully attempted to interview appellant in California, he was arrested in North Carolina. After waiving his *Miranda*[2] rights he admitted that on five or six occasions he rubbed Jana's buttocks and genitals after she approached him, lowered her clothing and complained that she had been hurt by a brother. He admitted that on one occasion he rubbed Jana's genitals, but stopped as soon as he felt himself becoming aroused.

*The Defense*

Appellant testified that he never molested Jana. He admitted that on one occasion while Jana was lying beside him on the couch watching a movie, he became aroused by the movie and got up. He also rubbed her buttocks when she had been kicked by a brother. He "[did] not believe" that he touched her bare buttocks. Appellant admitted a prior felony conviction in a "check case."

DISCUSSION

I-III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV

Appellant next argues that CALJIC No. 10.42.6 was impermissibly slanted toward the prosecution. The instruction stated, in part: "The People have introduced evidence tending to prove that there are more than three acts of substantial sexual conduct or lewd and lascivious conduct upon which a conviction in Count I may be based. Defendant may be found guilty if the proof shows beyond a reasonable doubt and you unanimously agree that the defendant committed three such acts. It is not necessary that you unanimously concur on which acts constitute the required number." Appellant claims the phrase, "tending to prove" conveyed the impression that the court believed the evidence showed that more than three acts were committed, relieving the prosecution of its burden of proof beyond a reasonable doubt.

Appellant's contention has merit. Instructing the jury that the People have introduced evidence "tending to prove" appellant's guilt carries the inference that the People have, in fact, established guilt. This inference would be

---

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

*See footnote, *ante*, page 1155.

eliminated if the phrase "for the purpose of showing" was substituted for "tending to prove," so that the instruction would read: "The People have introduced evidence for the purpose of showing that there are more than three acts . . . ."

■ However, an erroneous instruction requires reversal only when it appears that the error was likely to have misled the jury (Cal. Const., art. VI, § 13; *People* v. *Gordon* (1973) 10 Cal.3d 460, 470 [110 Cal.Rptr. 906, 516 P.2d 298]), and whether an erroneous or inartfully phrased instruction misled the jury to the defendant's prejudice is determined by reviewing the instructions as a whole. (*People* v. *Mardian* (1975) 47 Cal.App.3d 16, 46 [121 Cal.Rptr. 269]; *People* v. *Rhodes* (1971) 21 Cal.App.3d 10, 20 [98 Cal.Rptr. 249].)

■ In addition to the challenged instruction, the court instructed the jury pursuant to CALJIC No. 2.90 that "[a] defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt." The jury was also instructed pursuant to CALJIC No. 17.10 that "[i]f you are not satisfied beyond a reasonable doubt that the defendant is guilty of the crime charged, you may nevertheless convict him of any lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of such lesser crime[,]" and that its instructions should not be construed as an expression of the court's opinion on any of the facts. (CALJIC No. 17.31.)

In light of the entire body of instructions, it is not reasonably likely that CALJIC No. 10.42.6 misled the jury on the reasonable doubt standard.

## V, VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Peterson, P. J., and King, J., concurred.

A petition for a rehearing was denied September 21, 1994, and appellant's petition for review by the Supreme Court was denied December 14, 1994.

---

*See footnote, *ante*, page 1155.