[Nos. C051985, C052358. Third Dist. June 26, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER ANDERSON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts XVI through XX of the Discussion.

920

**Counsel**

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Dane R. Gillette and Mary Jo Graves, Chief Assistant Attorneys General, Michael P. Farrell, Carlos A. Martinez and Catherine G. Tennant, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

HULL, J.— ■ Effective January 1, 2006, the California Judicial Council adopted the "Judicial Council of California Criminal Jury Instructions (2006–2007)" which instructions are cited as "CALCRIM No. ___." In the published portion of this opinion, we consider various challenges to a number of the new criminal instructions. Most of the challenges involve isolated language that defendant reads out of context from the instruction as a whole or the other instructions given to the jury. Other challenges concern language virtually identical to that previously approved in the CALJIC instructions that were used in California for many years. We reject each of defendant's challenges:

In the unpublished portion of this opinion, we address various sentencing issues, which we also conclude are without merit.

In Tehama County Superior Court case No. NCR66211, defendant pleaded guilty to one count of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and admitted a prior strike (Pen. Code, §§ 1170.12, subds. (a)–(d), and 667, subds. (b)–(i)) and a prior prison term (Pen. Code, § 667.5). In Tehama County Superior Court case No. NCR67197, defendant was convicted by a jury of second degree robbery (Pen. Code, § 211) and presenting false identification to a peace officer (Pen. Code, § 148.9, subd. (a)). He was also found to have used a deadly weapon in connection with the robbery (Pen. Code, § 12022, subd. (b)(1)). He appealed both convictions and we have consolidated those appeals for all purposes. We affirm the judgments in their entirety.

Facts and Poceedings

*Case No. NCR66211*

In April 2005, Officer Eric Magrini responded to a call regarding a disturbance in an apartment complex in Red Bluff. He was directed to a particular apartment and knocked on the door. Defendant answered.

Magrini noticed tattoos on defendant's arm of a type common to those who have served time in prison and asked if defendant was on probation or parole. Defendant initially said no but later admitted he was on parole.

Magrini went into the apartment and began looking around. He found a spoon with a crystallized substance on it, a piece of cotton, and a hypodermic needle. Defendant said these items did not belong to him. A woman in the apartment also denied ownership or knowledge of the items.

Defendant was handcuffed and taken to a patrol car by another officer. He resisted "mildly" by pushing back against the officer as he was being taken to the car. When Magrini took defendant out of the patrol car at the jail, Magrini found a bindle containing a white substance on the floorboard, which had not been there before defendant was put into the car. The bindle tested positive for methamphetamine.

Defendant was charged with possession of a controlled substance, possession of drug paraphernalia (Health & Saf. Code, § 11364), and resisting arrest. The information also alleged defendant had served a prior prison term and had been convicted of a serious or violent felony within the meaning of Penal Code sections 1170.12, subdivisions (a) through (d) and 667,

subdivisions (b) through (i). As noted earlier, defendant pleaded guilty to the possession charge and admitted the prior prison term and the prior serious or violent felony conviction.

*Case No. NCR67197*

Late in the evening of October 5, 2005, Rosalio S. was visiting his girlfriend, April H., at the home of April's sister. While Rosalio and April sat in a car in front of the home, they saw a red Honda drive by slowly, turn around, and come back their way. There were two people in the car. Later, Rosalio and April saw the car parked a short distance behind them.

Two men got out of the car and walked up to Rosalio, who was sitting on the driver's side of the car with the window open. The larger man, later identified as defendant, leaned on the door, and asked what Rosalio and April were doing. The other man, later identified as Aaron Perry, stood beside defendant. Defendant told them they had to move the car because neighbors were "tripping" at the sight of an unknown car in the area. April told the men she lived there.

Defendant and Perry then reached into the car holding knives. Defendant put his knife to Rosalio's throat and asked if Rosalio had any money or drugs. He demanded Rosalio's wallet and Rosalio gave it to him. Defendant then reached across Rosalio and grabbed a cell phone from a console in the car. Perry took a leather jacket from the backseat of the car and the two left with the stolen property.

Rosalio and April reported the crime to police officers a few minutes later, and gave the officers a description of the car the thieves left in. The officer radioed the description of the car to others and four or five minutes later another officer saw a car that matched that description and followed it. The car stopped near a gas station and defendant and Perry, and a woman named Andrea Lafferty, got out. Perry walked toward a house, while defendant and Lafferty walked to the gas station.

The three were detained and searched and defendant and Perry were found to have pocketknives. At Perry's feet on the ground outside the car, officers found the cell phone taken from the victim's car. Officers found Rosalio's wallet on the ground, directly under the right front passenger seat. They found Rosalio's leather jacket in the trunk of the car.

Defendant identified himself to the officers as Kyle Jonathan Anderson.

The officers brought Rosalio and April to the gas station and they identified defendant and Perry as the men who robbed them.

At trial the jury found defendant guilty of second degree robbery and giving police false identification. He thereafter admitted he had served a prior prison term.

Defendant was sentenced on both matters to an aggregate term of seven years four months in prison. The trial judge ordered him to serve the upper term of five years for the robbery, with a consecutive one-year enhancement for the use of a weapon; a concurrent term of six months for giving false identification; and a consecutive 16 months for his possession of methamphetamine.

DISCUSSION

I

*Introduction*

As noted, defendant raises a number of challenges to the new CALCRIM jury instructions. He admits his attorney did not object to any of these instructions at trial.

Failure to object to instructional error forfeits the issue on appeal unless the error affects defendant's substantial rights. (Pen. Code, § 1259; *People v. Flood* (1998) 18 Cal.4th 470, 482, fn. 7 [76 Cal.Rptr.2d 180, 957 P.2d 869]; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1192–1193 [36 Cal.Rptr.2d 235, 885 P.2d 1].) The question is whether the error resulted in a miscarriage of justice under *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]. (*People. v. Arredondo* (1975) 52 Cal.App.3d 973, 978 [125 Cal.Rptr. 419].)

Defendant argues the instructional errors led to a miscarriage of justice and further argues that, to the extent his challenges have been forfeited by counsel's failure to object, he received ineffective assistance of counsel. We address defendant's challenges on the merits, both to determine whether there has been a miscarriage of justice and to determine whether he received ineffective assistance of counsel.

II

*CALCRIM No. 200*

Defendant raises two challenges to the opening instruction given by the court, CALCRIM No. 200. That instruction reads:

"Members of the jury, I will now instruct you on the law that applies. [I will give you a copy of these instructions to use in the jury room.] [Each of you has a copy of these instructions to use in the jury room.]

"You must decide what the facts are. It is up to you, exclusively, to decide what happened, based only on the evidence that has been presented to you in this trial.

"Do not let bias, sympathy, prejudice, or public opinion influence your decision.

"You must reach your verdict without any consideration of punishment.

"You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions.

"Pay careful attention to all of these instructions and consider them together. If I repeat any instruction or idea, do not conclude that it is more important than any other instruction or idea just because I repeated it.

"Some words or phrases used during this trial have legal meanings that are different from their meanings in everyday use. These words and phrases will be specifically defined in these instructions. Please be sure to listen carefully and follow the instructions that I give you. Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings.

"Some of these instructions may not apply, depending on your findings about the facts of the case. [Do not assume just because I give a particular instruction that I am suggesting anything about the facts.] After you have decided what the facts are, follow the instructions that do apply to the facts as you find them."

Defendant contends the opening sentence of this instruction, where the court says it is about to instruct the jury on the law "that applies," wrongly implies that all of the instructions that will follow apply to the case. Defendant argues this single sentence usurps the jury's fundamental duty to decide the facts and to decide which instructions apply to those facts.

This argument depends upon a strained interpretation of a single sentence read out of context. "It is well established in California that the correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a

particular instruction." (*People v. Burgener* (1986) 41 Cal.3d 505, 538–539 [224 Cal.Rptr. 112, 714 P.2d 1251], disapproved on other grounds in *People v. Reyes* (1998) 19 Cal.4th 743, 753–754 [80 Cal.Rptr.2d 734, 968 P.2d 445].) Elsewhere in CALCRIM No. 200, the jury is told it "must decide what the facts are." The instruction concluded: "Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume because I give a particular instruction that I have suggested anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." Read as a whole, CALCRIM No. 200 makes it abundantly clear in straightforward language that it is the jury who decides the facts and the jury who determines which instructions apply to those facts.

Defendant next challenges that portion of the instruction that reads: "You must reach your verdict without any consideration of punishment." Defendant contends this sentence gives the false impression the jury *must* reach a verdict in the case when, in fact, it is not required to do so. But defendant reads the instruction with the wrong emphasis on the sentence in question. That sentence does not tell the jury it *must* reach a verdict, but tells the jury that, in reaching a verdict, it *must not* consider punishment.

And we note that, elsewhere, in CALCRIM No. 3550, the jury was told: "You should try to agree on a verdict if you can." This instruction further explained: "If you are able to reach a unanimous decision on only one or only some of the charges, fill in those verdict forms only . . . ." Read as a whole, the instructions did not tell the jury it had to reach a verdict. There was no error.

### III

### *CALCRIM Nos. 223 and 224*

Defendant challenges CALCRIM Nos. 223 and 224 concerning the use of direct and circumstantial evidence. He argues these instructions are confusing and misleading and, when given together, contradictory. However, as to the latter point, defendant fails to explain where the contradiction lies or provide any argument or authorities to support this contention. A point not argued or supported by citation to authority is forfeited. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834].)

As given by the trial court, CALCRIM No. 223 read: "Facts may be proved by direct or circumstantial evidence or by a combination of both. Direct evidence can . . . prove a fact by itself. For example, if a witness testifies he saw it raining outside before he came into the courthouse, that

testimony is direct evidence that it was raining. Circumstantial evidence also may be called indirect evidence. Circumstantial evidence does not directly prove the fact to be decided, but is evidence of another fact or group of facts from which you may conclude the truth of the fact in question. For example, if a witness testifies that he saw someone come inside wearing a raincoat covered with drops of water, that testimony is circumstantial evidence because it may support a conclusion that it was raining outside.

"Both direct evidence and circumstantial evidence are acceptable types of evidence to prove or disprove the elements of the charge, including intent and acts necessary to a conviction, and neither is necessarily more reliable than the other. Neither is entitled to any greater weight than the other. You must decide whether a fact in issue has been proved based on all of the evidence."

Defendant argues this instruction gives the false impression that direct and circumstantial evidence must be accorded equal weight, when in fact it is for the jury to decide what weight to give particular testimony or other evidence. According to defendant, this instruction "could erroneously leave the jurors with the impression they are not free to give specific circumstantial evidence greater weight than other specific direct evidence or vice versa." (Boldface omitted.) We disagree.

Defendant cites no legal authority for his argument, which is not surprising. CALCRIM No. 223 does not suggest to jurors they must accord direct and circumstantial evidence equal weight or that the jurors are not free to give the evidence, whether direct or circumstantial, whatever weight they deem appropriate. It states that neither direct nor circumstantial evidence "is necessarily more reliable than the other" and that neither "is entitled to greater weight than the other." The fact that one type of evidence is not *necessarily* more reliable than another does not preclude the jury from so finding in a given case. The fact that one type of evidence is not *entitled* to greater weight than another does not preclude the jury from nevertheless giving one type greater weight than another. Reasonably read, the instruction cautions only that neither direct nor circumstantial evidence should be accorded greater weight simply because it is direct or circumstantial evidence.

Defendant raises a number of challenges to CALCRIM No. 224. As given here, that instruction read: "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the Defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt.

"Also, before you may rely on circumstantial evidence to find the Defendants guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the Defendants are guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points to innocence and another to guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

■ Defendant contends that because this instruction is limited to circumstantial evidence and sets forth basic reasonable doubt and burden of proof principles, it gives the false impression these principles apply only to circumstantial evidence, not direct evidence. Defendant misreads the instruction. CALCRIM No. 224 does not set out basic reasonable doubt and burden of proof principles; these are described elsewhere. Although the instruction reiterates that each fact necessary for conviction must be proved beyond a reasonable doubt, the obvious purpose of the instruction is to limit the use of circumstantial evidence in establishing such proof. It cautions the jury not to rely on circumstantial evidence to find the defendant guilty unless the only reasonable conclusion to be drawn from it points to the defendant's guilt. In other words, in determining whether a fact necessary for conviction has been proved beyond a reasonable doubt, circumstantial evidence may be relied on only if the only reasonable inference that may be drawn from it points to the defendant's guilt.

The same limitation does not apply to direct evidence. Circumstantial evidence involves a two-step process: presentation of the evidence followed by a determination of what reasonable inference or inferences may be drawn from it. By contrast, direct evidence stands on its own. It is evidence that does not require an inference. Thus, as to direct evidence, there is no need to decide whether there is an opposing inference that suggests innocence.

Defendant next contends the instruction should not be limited to circumstantial evidence, because California law has long recognized the principle that "if two reasonable interpretations of the evidence exist, the one favoring the defendant's innocence must be adopted," and this principle applies to both direct and circumstantial evidence. However, this argument mixes apples with oranges. Defendant cites as support a number of cases where the juries had been instructed that if two conclusions can be drawn from the evidence as a whole, one pointing to guilt and the other pointing to innocence, it must find the defendant not guilty. (See *People v. Bender* (1945) 27 Cal.2d 164, 175–177 [163 P.2d 8] (*Bender*); *People v. Foster* (1926) 198 Cal. 112, 127–128 [243 P. 667]; *People v. Barthleman* (1898) 120 Cal. 7, 10–11 [52 P. 112]; *People v. Naumcheff* (1952) 114 Cal.App.2d 278, 281–282 [250 P.2d 8];

*People v. Haywood* (1952) 109 Cal.App.2d 867, 872 [241 P.2d 665]; *People v. Carroll* (1947) 79 Cal.App.2d 146, 150 [179 P.2d 75].) But the question addressed by CALCRIM No. 224 is not how to consider the evidence *as a whole* but how to consider specific circumstantial evidence. The instruction concerns whether a necessary fact may reasonably be inferred from circumstantial evidence when that evidence can be construed in a way that points to the defendant's innocence, not whether the evidence as a whole may reasonably be construed to point to the defendant's innocence.

Defendant next contends the authority for CALJIC No. 2.01, which is similar to CALCRIM No. 224, was *Bender, supra,* 27 Cal.2d 164, and *Bender* did not hold the instruction should be given only in circumstantial evidence cases. Rather, according to defendant, the court stated "the instruction, as applied to all of the evidence, was 'eminently proper . . . .' " However, unlike the present case, the evidence in *Bender* that tended to show the defendant killed his wife was "entirely circumstantial." (*Bender, supra,* at p. 174.) Thus, while the instruction may have been proper as to all the evidence, all the evidence in *Bender* was circumstantial.

Defendant contends CALCRIM No. 224 improperly couches the jury's choices in terms of whether the circumstantial evidence points to him being guilty or innocent, rather than being guilty or not guilty. According to defendant, this places a burden on him to prove his innocence.

Defendant's argument stems from *People v. Han* (2000) 78 Cal.App.4th 797 [93 Cal.Rptr.2d 139] (*Han*). In *Han*, the defendant raised this same argument in connection with the trial court's rejection of a proposed modification of CALJIC No. 2.01 to "substitute[] a lack of finding of guilt for one of innocence." (*Han, supra,* at p. 809.) The Court of Appeal agreed the modification would have made the instruction more accurate, explaining: "We recognize the semantic difference and appreciate the defense argument. We might even speculate that the instruction will be cleaned up eventually by the CALJIC committee to cure this minor anomaly, for we agree that the language is inapt and potentially misleading in this respect *standing alone.*" (*Id.* at p. 809.) However, the court went on to conclude the defendant was not harmed because other instructions, primarily the reasonable doubt instruction, prevented any confusion. (*Ibid.*)

We cannot agree with the *Han* court's criticism of CALJIC No. 2.01. For a defendant to be found not guilty, it is not necessary that the evidence as a whole prove his innocence, only that the evidence as a whole fails to prove his guilt beyond a reasonable doubt. In other words, a not guilty verdict is based on the insufficiency of the evidence of guilt.

However, when considering isolated items of evidence, the issue is different. A particular item of evidence may fall into one of three categories: it may tend to prove guilt; it may tend to prove innocence; or it may have no bearing on guilt or innocence. If the evidence falls into the latter category, it does not support either a guilty or a not guilty verdict. In effect, the evidence is not relevant to the case and should be excluded. Thus, if a particular item of evidence, circumstantial or otherwise, is relevant to the jury's ultimate determination, it is relevant only because it tends to prove either guilt or innocence.

CALCRIM No. 224 simply recognizes this distinction when the jury is considering the circumstantial evidence as a whole. Notably, each of the cases cited by defendant in support of his preceding argument—that CALCRIM No. 224 should not be limited to circumstantial evidence—also recognizes this distinction. In each, the instruction given referred to guilt and innocence rather than guilt and the absence of guilt. (See *Bender, supra,* 27 Cal.2d at p. 177 [" 'If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence' "]; *People v. Foster, supra,* 198 Cal. at p. 128 ["considering the evidence as a whole, if it was susceptible of two reasonable interpretations, 'one looking towards guilt and the other towards the innocence of the defendant' "]; *People v. Barthleman, supra,* 120 Cal. at p. 10 [" 'The jury are instructed that if the evidence points to two conclusions, one consistent with the defendant's guilt, the other consistent with the defendant's innocence' "]; *People v. Naumcheff, supra,* 114 Cal.App.2d at p. 281 [" 'if from the evidence you can with equal propriety draw two conclusions, the one of guilt, the other of innocence' "]; *People v. Haywood, supra,* 109 Cal.App.2d at p. 872 [" 'the testimony in this case if its weight and effect be such as two conclusions can be reasonably drawn from it, the one favoring the defendant's innocence, and the other tending to establish his guilt' "]; *People v. Carroll, supra,* 79 Cal.App.2d at p. 150 [" 'You are instructed that if from the evidence you can with equal propriety draw two conclusions, the one of guilt, the other of innocence' "].)

Defendant's final contention on CALCRIM No. 224 concerns use of the word "convinced." He argues the instruction incorrectly defines the burden of proof in terms of being convinced of guilt rather than proof beyond a reasonable doubt. According to defendant, "an instruction is deficient if it merely requires the jurors be 'convinced' or 'satisfied' the defendant is guilty."

CALCRIM No. 224 does not undermine the burden of proof. As explained above, the instruction does not define the burden of proof; this is done elsewhere. Although the instruction reiterates that burden, it does not do so erroneously. CALCRIM No. 224 begins: "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt." Telling the jury it must be "convinced" that each essential fact has been proved "beyond a reasonable doubt" in no way undermines the applicable burden of proof. The instruction continues: "Also, before you may rely on circumstantial evidence to find the defendants guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty." This does not concern the burden of proof but the threshold inquiry regarding the use of circumstantial evidence. Before such evidence may be considered, the jury must conclude, i.e., be *convinced*, the only reasonable inference from the evidence points to the defendant's guilt. Defendant does not contend there is any defect in this threshold inquiry.

IV

*CALCRIM No. 226*

Defendant challenges CALCRIM No. 226, the instruction on determining the credibility of witnesses. As given here, it read:

"You alone must judge the credibility or believability of the witnesses. In deciding whether testimony is true and accurate, use your common sense and experience. The testimony of each witness must be judged by the same standard. You must set aside any bias or prejudice you may have, including any based on the witness's gender, race, religion or national origin. You may believe all, part, or none of a witness's testimony. Consider the testimony of each witness and decide how much of it you believe. . . .

"In evaluating a witness's testimony, you may consider anything that . . . reasonably tends to prove or disprove the truth or accuracy of that testimony. Among the factors that you may consider are:

"How well could the witness see, hear, or otherwise perceive the things about which the witness has testified?

"How well was the witness able to remember and describe what happened?

"What was the witness's behavior while testifying?

"Did the witness understand the questions and answer them directly?

"Was the witness's testimony influenced by a factor such as bias or prejudice, a personal relationship with someone involved in the case, or a personal interest in how the case is decided?

"What was the witness's attitude toward the case or about testifying?

"Did the witness make a statement in the past that is consistent or inconsistent with his or her testimony?

"How reasonable is the testimony when you consider all the other evidence in the case?

"Did other evidence prove or disprove any fact about which the witness has testified?

"Did the witness admit to being untruthful?

"What is the witness's character for truthfulness?

"Has the witness engaged in other conduct that reflects on his or her believability?

"Do not automatically reject testimony just because of inconsistencies or conflicts. Consider whether the differences are important or not. People sometimes honestly forget things or make mistakes about what they remember. Also, two people may witness the same event yet see or hear it differently.

"If you do not believe a witness's testimony that he or she no longer remembers something, that testimony is inconsistent with the witness's earlier statement on that subject.

"If you decide that a witness deliberately lied about something significant in this case, you should consider not believing anything that witness says. Or, if you think the witness lied about some things, but told the truth about others, you may simply accept the part that you think is true and ignore the rest."

Defendant takes issue with a single word in this instruction—"sometimes." He argues that instead of saying "[p]eople sometimes honestly forget things or make mistakes about what they remember," the instruction should have

retained the language in the CALJIC No. 2.21.1. That instruction read: "Failure of recollection is common. Innocent misrecollection is not uncommon." (CALJIC No. 2.21.1 (7th ed. 2003).) According to defendant, "sometimes" is different from "not uncommon" and reflects a less frequent event. Thus, defendant argues, CALCRIM No. 226 "gives the eyewitness a false aura of credibility."

Assuming "not uncommon" and "sometimes" reflect a different level of frequency, defendant cites no authority for the proposition, implicit in his argument, that the "not uncommon" language of the prior instruction stated the correct standard. A point not argued or supported by citation to authority is forfeited. (*Kim v. Sumitomo Bank, supra*, 17 Cal.App.4th at p. 979.)

At any rate, defendant has it backward. The function of the challenged statement, as evident from the context of the instruction as a whole, is not to quantify how often witnesses make mistakes, but to caution the jury not to reject a witness's testimony just because of inconsistencies or conflicts. If, as defendant argues, the language of the new instruction suggests *honest* misrecollection occurs less frequently than was suggested by the prior instruction, this implies the new instruction would lead the jury to conclude inconsistencies or conflicts in a witness's testimony are due less frequently to honest mistake and, consequently, more frequently due to dishonesty. Hence, the new instruction would make the witnesses appear less, rather than more, credible.

But, as indicated, the function of the challenged statement is not to comment on the witness's credibility but to caution against rejection of the witness's testimony just because of inconsistencies or conflicts in it. The language of both former CALJIC No. 2.21.1 and CALCRIM No. 226 adequately make the point.

## V

### CALCRIM No. 251

Defendant challenges CALCRIM No. 251, the instruction on the required union of actus reus and mens rea. He contends the instruction contains an insufficient description of the actus reus. We disagree.

As given here, CALCRIM No. 251 stated: "The crime charged in Count I, as to both Defendants, requires proof of the union, or joint operation, of act and wrongful intent. [¶] In order to be guilty of the crime of robbery, a person must not only intentionally commit the prohibited act, but must do so with the specific intent. The act and intent required are explained in the instructions for the crime."

Defendant points out that CALJIC No. 3.31, the precursor of CALCRIM No. 251, informed the jury there must exist "a union or joint operation of act *or conduct* and a certain specific intent in the mind of the perpetrator." (CALJIC No. 3.31 (7th ed. 2003), italics added.) He argues that by dropping the words "or conduct," CALCRIM No. 251 "fails to assure the jurors will understand the need to find the required concurrence between the defendant's conduct and mens rea."

Although not raised by defendant, this same argument could be made with respect to CALCRIM No. 250, which concerns general intent crimes and was given here in connection with the charge of providing false identification to a peace officer. The predecessor to CALCRIM No. 250, CALJIC No. 3.30, also referred to "act or conduct." (CALJIC No. 3.30 (7th ed. 2003).)

The People contend the language of CALCRIM No. 251 is much simpler than its predecessor and "there is no need to include 'conduct' in the instruction, since the word 'act' plainly encompasses an individual's conduct."

We agree with the People. With respect to a joint operation instruction, the words "act" and "conduct" essentially convey the same meaning. The function of CALCRIM No. 251 is to alert the jury that, where a crime requires a specific intent or mental state, the defendant must have that specific intent or mental state at the same time he performs the acts necessary for the crime. In other words, there must be a temporal concurrence between the required mental state and the outward actions of the defendant. Whether those outward actions involve a discrete act or a course of conduct is immaterial.

## VI

### *CALCRIM No. 300*

Defendant challenges CALCRIM No. 300, which reads: "Neither side is required to call all witnesses who may have information about the case or to produce all physical evidence that might be relevant." He concedes this instruction "may be technically correct as far as it goes." However, he argues that because the instruction applies to both sides, and says that neither side is required to call *all* witnesses or produce *all* physical evidence, "the jury might be left with the belief the defense is required to produce 'some' evidence." According to defendant, the instruction permits the jury to conclude he must prove or disprove certain facts or issues and his failure to produce evidence might be seen as an admission of guilt.

We are not persuaded. In *People v. Simms* (1970) 10 Cal.App.3d 299 [89 Cal.Rptr. 1] (*Simms*), the court considered CALJIC No. 2.11, which is similar to CALCRIM No. 300. CALJIC No. 2.11 read: "Neither side is required to call as witnesses *all* persons who may have been present at any of the events disclosed by the evidence . . . . Neither side is required to produce *all* objects or documents mentioned or suggested by the evidence." (CALJIC No. 2.11 (7th ed. 2003), italics added.) In response to the defendant's argument, the instruction could have led the jury to infer the burden of proof was to be shared by the People and the defendant, the *Simms* court said: "This contention is unsupported by any authority and we therefore are entitled to reject it on this ground. [Citations.] We observe, moreover, that the instruction is a correct statement of law and that it was proper to so instruct. [Citations.] With respect to the burden of proof, the jury was thoroughly instructed on this burden. Although such instructions on the burden of proof did not immediately follow the questioned instruction, defendant does not point out that there was any confusion. We are entitled to assume that the jurors followed the court's instructions." (*Simms, supra,* at p. 313.)

In the present matter, the jury was instructed with CALCRIM No. 220 on the presumption of innocence and the prosecution's burden of proof. This was reiterated in CALCRIM No. 315, which, as given here, stated: "The People have the burden of proving beyond a reasonable doubt that it was the Defendant who committed the crime. If the People have not met this burden, you must find the Defendants not guilty." It was also reinforced by CALCRIM No. 355: "[D]efendant Anderson has an absolute constitutional right not to testify. He or she [*sic*] may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. . . ."

In evaluating a claim the jury could have misconstrued an instruction, the test on review is " ' "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' " (*People v. Raley* (1992) 2 Cal.4th 870, 901 [8 Cal.Rptr.2d 678, 830 P.2d 712], quoting *Estelle v. McGuire* (1991) 502 U.S. 62, 72 [116 L.Ed.2d 385, 399, 112 S.Ct. 475].) In light of the burden of proof instructions given by the court, which we presume the jury followed (*People v. Adcox* (1988) 47 Cal.3d 207, 253 [253 Cal.Rptr. 55, 763 P.2d 906]), it is not reasonably likely the jury would have misunderstood CALCRIM No. 300 as defendant suggests.

VII

*CALCRIM No. 302*

Defendant challenges CALCRIM No. 302, the instruction on evaluating conflicting evidence, on several bases. As given here, CALCRIM No. 302

read: "If you determine there is a conflict in the evidence, you must decide what evidence, if any, to believe. Do not simply count the number of witnesses who agree or disagree on a point and accept the testimony of the greater number of witnesses. On the other hand, do not disregard the testimony of the greater number of witnesses, or any witness, without a reason or because of prejudice or a desire to favor one side or the other. What is important is whether the testimony or any other evidence convinces you, not just the number of witnesses who testify about a certain point."

Defendant contends that by instructing the jury not to disregard the testimony of a witness without a reason, CALCRIM No. 302 "creates the presumption all witnesses are deemed to be truthful, 'unless' a juror has a reason to conclude otherwise." According to defendant, when this presumption is applied to prosecution witnesses, it undermines the presumption of innocence by requiring the jury to accept the testimony unless the defendant disproves it.

This argument disregards CALCRIM No. 226, which was given by the court shortly before the court read CALCRIM No. 302. As noted above, CALCRIM No. 226 instructed the jurors they alone must determine the credibility or believability of the witnesses and set forth a number of factors the jurors may consider in making this determination. It is this instruction that informs the jurors' assessment of whether there may be a reason to disregard a witness's testimony or any part thereof. CALCRIM No. 302 does not create a presumption of credibility. It merely cautions the jurors not to disregard testimony on a whim. In this regard, CALCRIM No. 302 is no different from CALJIC No. 2.22, which cautions jurors not to disregard the testimony of the greater number of witnesses "merely from caprice, whim or prejudice." (CALJIC No. 2.22 (7th ed. 2003).) In *People v. Rincon-Pineda* (1975) 14 Cal.3d 864 [123 Cal.Rptr. 119, 538 P.2d 247], the state high court directed that CALJIC No. 2.22 "be given in every criminal case in which conflicting testimony has been presented." (14 Cal.3d at pp. 884–885.)

Defendant next contends CALCRIM No. 302 conflicts with the presumption of innocence by instructing the jury "not to 'favor one side over the other.' " Defendant misreads the instruction. CALCRIM No. 302 cautions the jury not to disregard testimony "without a reason or because of prejudice *or a desire to favor one side or the other*." (Italics added.) The instruction does not tell the jury not to favor one side over the other; it cautions against disregarding testimony because of a desire to favor one side over the other.

Defendant contends CALCRIM No. 302 improperly implies that disbelief of defense witnesses necessarily means that prosecution witnesses are believable. However, defendant does not explain how the instruction does so. To

the extent this is merely a restatement of defendant's argument that the instruction creates a presumption of credibility of prosecution witnesses, this has been addressed above.

Finally, defendant contends CALCRIM No. 302 improperly instructs the jury to choose between the People's witnesses and those of the defense. Defendant argues the jury may instead accept some portions of a witness's testimony and reject other portions.

This contention is again based on a misreading of the instruction. CALCRIM No. 302 cautions not to "simply count the number of witnesses who agree or disagree *on a point* and accept the testimony of the greater number of witnesses." (Italics added.) It further cautions: "What is important is whether the testimony or any other evidence convinces you, not just the number of witnesses who testify *about a certain point*." (Italics added.) The instruction says nothing about choosing between prosecution and defense witnesses. It merely states the common sense notion that the number of witnesses who have given testimony on a particular point is not the test for the truth of that point. It does no more. The jury remains free to choose the witness or witnesses it believes and what part of a witness's testimony it finds believable.

## VIII

### CALCRIM No. 316

Defendant challenges CALCRIM No. 316, which as given here read: "If you find that a witness has committed a crime or other misconduct, you may consider that fact only in evaluating the credibility of the witness's testimony. The fact that a witness may have committed a crime or other misconduct does not necessarily destroy or impair a witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable." Defendant contends that by saying the jury "may consider" instead of "must consider" prior crimes evidence, the instruction "effectively informs the jury it is not obligated to consider relevant and critical evidence." He argues this violates his constitutional right to have the jury consider defense evidence or a defense theory.

Once again, defendant misreads the instruction. The function of CALCRIM No. 316 is not to inform the jury what evidence may or may not be considered. CALCRIM No. 220 informs the jury it must consider "all the evidence that was received throughout the entire trial." The function of CALCRIM No. 316 is to inform the jury *how* prior crimes evidence may be used. Such evidence may be considered only in evaluating the witness's

credibility. Thus, CALCRIM No. 220 tells the jury it must consider all evidence and CALCRIM No. 316 limits consideration of prior crimes evidence to the issue of credibility. Defendant does not challenge this limitation on the use of prior crimes evidence.

## IX

### *CALCRIM No. 355*

Defendant contends CALCRIM No. 355, the instruction that tells the jury not to consider defendant's failure to testify, does just the opposite by "permitting or encouraging the jury to consider and/or to rely on [his] silence prior to trial and/or failure to testify at trial." We disagree.

As given here, CALCRIM No. 355 read: "*Defendant Anderson has an* absolute constitutional right not to testify. He or she [*sic*] may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. Do not consider, for any reason at all, the fact that the defendant did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way."

Defendant argues that by saying he may rely on the state of the evidence and "argue" the People have failed to prove the charges, the instruction implies he has a burden to *argue* the prosecution has not proved its case. Defendant takes this one step further and asserts "it is not up to him to prove he is not guilty."

■ This argument cannot withstand scrutiny for two reasons. First, it contains a logically unwarranted leap from what defendant sees as a requirement that he *argue* he is not guilty to one that he *proves* he is not guilty. A "requirement," even if there was one, that defendant argue he is not guilty has nothing to do with the production of evidence. A defendant can argue the People have not proven their case without testifying or presenting any evidence.

■ Second, the instruction does not imply a defendant *must* argue he is not guilty. It says the defendant *may* rely on the evidence and *may* argue the People have not proven their case. The defendant is under no obligation to argue anything, and the instruction does not imply otherwise.

X

*CALCRIM No. 370*

Defendant challenges CALCRIM No. 370, which instructs the jury on the use of motive evidence, on several grounds. However, as we shall explain, none of these grounds can withstand careful consideration.

As given here, CALCRIM No. 370 read: "The People are not required to prove that the Defendants had a motive to commit any of the crimes charged. In reaching your verdict you may, however, consider whether the Defendants had a motive. [¶] Having a motive may be a factor tending to show that the Defendants are guilty. Not having a motive may be a factor tending to show the Defendants are not guilty."

Defendant contends that by saying, "In reaching your verdict," the instruction improperly implies the jury is obligated to reach a verdict in the case. However, as explained in part II, *ante*, another instruction, CALCRIM No. 3550 advises: "You should try to agree on a verdict if you can." It further explains: "[If you are able to reach a unanimous decision on only one or only some of the (charges/ [or] defendants), fill in (that/those) verdict form[s] only . . . ." The correctness of jury instructions is determined from the entire charge of the court. (*People v. Burgener, supra*, 41 Cal.3d at pp. 538–539.)

Defendant next argues the second sentence of CALCRIM No. 370, which informs the jury it may consider whether he "had a motive," wrongly implies *any* motive will suffice, not just a motive to commit the charged offenses. However, this ignores the first sentence of the instruction, which says "[t]he People are not required to prove that the defendant has a motive *to commit (any of the crimes/the crime) charged.*" (Italics added.) The second sentence of the instruction must be read in the context of the first. Thus, it does not imply *any* motive may be considered.

Defendant next contends CALCRIM No. 370 "employs erroneous burden shifting language by implying a defense obligation to 'show the defendant is not guilty.' " This is a reference to the final sentence of the instruction, which says a lack of motive may be a factor tending to show the defendant is not guilty. However, this sentence says nothing about the burden of proof, which is discussed elsewhere in the instructions. CALCRIM No. 370 addresses the issue of relevance. It tells the jury how it may apply motive evidence, if any has been presented. There was no burden shifting.

Defendant's final contention regarding CALCRIM No. 370 is that it "effectively informs the jury motive alone may be the basis for a finding of

guilt." This argument is based on the statement in the instruction that "[h]aving a motive may be a factor tending to show that the defendant is guilty."

Defendant cites as support *People v. Owens* (1994) 27 Cal.App.4th 1155 [33 Cal.Rptr.2d 354] (*Owens*), where the jury was instructed: " 'The People have introduced evidence tending to prove that there are more than three acts of substantial sexual conduct or lewd and lascivious conduct upon which a conviction in Count I may be based.' " (27 Cal.App.4th at p. 1158.) The defendant there argued the instruction gave the impression the court had concluded the evidence showed more than three acts of misconduct had been committed, thereby relieving the prosecution of its burden of proof. (*Ibid.*) The Court of Appeal agreed, explaining: "Instructing the jury that the People have introduced evidence 'tending to prove' appellant's guilt carries the inference that the People have, in fact, established guilt. This inference would be eliminated if the phrase 'for the purpose of showing' was substituted for 'tending to prove' . . . ." (27 Cal.App.4th at pp. 1158–1159.)

*Owens* is inapposite. The problem there was that the trial court informed the jury the People *had* presented evidence tending to prove the fact in issue. CALCRIM No. 370 does not say evidence tending to prove the defendant had a motive to commit the crime has been presented. Instead, it says such evidence, if it has been presented, may tend to prove guilt.

Defendant argues the instruction should have expressly informed the jury that motive evidence alone is insufficient for conviction. He points to several other instructions that do so. (See, e.g., CALCRIM Nos. 359, 362, 371, 372, 376, 415, 1191.) Defendant argues a reasonable juror would conclude the omission of a similar statement in CALCRIM No. 370 was intentional, i.e., that motive evidence *is* enough for conviction.

This argument is belied by the language of the instruction as a whole. CALCRIM No. 370 says that motive "may be a factor *tending* to show that the defendant is guilty." (Italics added.) Saying motive is a factor that may *tend* to prove guilt is a far cry from saying it is a factor that alone may prove guilt. The fact that evidence tends to prove guilt merely establishes its relevance on the issue.

## XI

### CALCRIM No. 220

Defendant challenges CALCRIM No. 220, which states the basic presumption of innocence and defines reasonable doubt. As given here, it read:

"The fact that a criminal charge has been filed against the defendant[s] is not evidence that the charge is true. You must not be biased against the defendant[s] just because (he/she/they) (has/have) been arrested, charged with a crime, or brought to trial.

"A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt [unless I specifically tell you otherwise].

"Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

"In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant[s] guilty beyond a reasonable doubt, (he/she/they) (is/are) entitled to an acquittal and you must find (him/her/them) not guilty."

Defendant contends CALCRIM No. 220 contains language that may be read to infer bias against the defendant for some reasons is permissible. Defendant refers specifically to the first paragraph of the instruction. He argues that by enumerating certain reasons for which bias against the defendant is not permissible, all other reasons are fair game.

■■■ This argument is without merit. The function of CALCRIM No. 220 is to inform the jury of the presumption of innocence and the People's burden to prove guilt beyond a reasonable doubt. Consistent with this function, the instruction tells the jury that the fact the defendant has been arrested, charged with a crime, or brought to trial may not be considered against him. These factors relate directly to the presumption of innocence. Defendant does not suggest what other factors should have been included in the instruction. In CALCRIM No. 200, the jury was told: "Do not let bias, sympathy, prejudice, or public opinion influence your decision." For CALCRIM No. 220 simply to have repeated a blanket prohibition against bias would have been outside its purpose.

## XII

### CALCRIM No. 1600

■■■ Defendant contends CALCRIM No. 1600, which sets forth the elements of the crime of robbery, is deficient in two ways: (1) it does not

require proof the victim was actually afraid, and (2) it does not require proof of force beyond that necessary to accomplish seizure of the property. We conclude there is no requirement that the instruction define the terms fear or force as defendant suggests.

As given here, CALCRIM No. 1600 read: "The Defendants are charged in Count I with robbery.

"To prove the Defendants are guilty of this crime, the People must prove that:

"1. The Defendants took property that was not their own;

"2. The property was taken from another person's possession and immediate presence;

"3. The property was taken against that person's will;

"4. *The Defendants used force or fear to take the property or to prevent the person from resisting*;

"AND

"5. When the Defendants used force or fear to take the property, they intended to deprive the owner of it permanently/or to remove it from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property.

"The Defendants' intent to take the property must have been formed before or during the time they used force or fear. If the Defendants did not form this required intent until after using the force or fear, then they did not commit robbery.

"A person takes something when he or she gains possession of it and moves it some distance. The distance moved may be short.

"The property taken may be of any value, however slight. Two or more people may possess something at the same time.

"A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person." (Italics added.)

Case law supports defendant's assertions that the fear necessary for robbery is subjective in nature, requiring proof "that the victim was in fact afraid, and that such fear allowed the crime to be accomplished." (*People v. Mungia* (1991) 234 Cal.App.3d 1703, 1709, fn. 2 [286 Cal.Rptr. 394].) Case law also establishes that the force necessary to elevate a theft to a robbery must be something more than that required to seize the property. (*People v. Bolander* (1994) 23 Cal.App.4th 155, 163 [28 Cal.Rptr.2d 365]; *People v. Morales* (1975) 49 Cal.App.3d 134, 139 [122 Cal.Rptr. 157].)

However, defendant cites no authority for the proposition that the jury must be instructed on these aspects of the force or fear elements. "[W]hen terms have no technical meaning peculiar to the law, but are commonly understood by those familiar with the English language, instructions as to their meaning are not required." (*People v. Anderson* (1966) 64 Cal.2d 633, 639 [51 Cal.Rptr. 238, 414 P.2d 366].) In *Anderson, supra*, at page 640, the state high court concluded: "The terms 'force' and 'fear' as used in the definition of the crime of robbery have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors." (See also *People v. Griffin* (2004) 33 Cal.4th 1015, 1025–1026 [16 Cal.Rptr.3d 891, 94 P.3d 1089]; *People v. Mungia, supra*, 234 Cal.App.3d at p. 1708.)

Defendant acknowledges the foregoing principle, but asserts it does not apply "when the evidence raises the issue of whether the force used was substantially more than that required to commit the underlying offense." However, even if this were true, the present matter does not involve a taking by force. Rather, defendant put a knife to the victim's throat and took the property without any resistance. This was not a matter of the defendant pulling the property from the victim's hands. The victim gave it up willingly out of fear. Hence, defendant's argument about the level of force required has no application in this case. The trial court was not required to define the terms "fear" and "force" for the jury.

## XIII

## CALCRIM No. 376

Defendant challenges CALCRIM No. 376, the instruction on possession of recently stolen property. As given to the jury, it read:

"If you conclude that the Defendants knew they possessed the property and you conclude the property had in fact recently been stolen, you may not convict the Defendants of robbery based on those facts alone. However, if you also find that supporting evidence tends to prove their guilt, then you may conclude that the evidence is sufficient to prove they committed robbery.

"The supporting evidence need only be slight and may not be enough by itself to prove . . . guilt. You may consider how, where, and when the Defendants possessed the property, along with any other relevant circumstances tending to prove their guilt of robbery.

"Remember that you may not convict the Defendant of any crime unless you are convinced . . . that each fact essential to the conclusion that the Defendant is guilty of that crime has been proved beyond a reasonable doubt."

Defendant contends CALCRIM No. 376 has three defects: (1) It informs the jury that possession of recently stolen property may tend to prove guilt of robbery when, alternately, it may prove guilt of the lesser included offense of theft. (2) The instruction creates an improper inference of guilt from possession alone by ignoring the added requirement that the possession be unexplained. (3) The instruction improperly informs the jury that only slight corroborating evidence is necessary to support a guilty verdict. We find no such defects in the instruction.

The first alleged defect—that the instruction improperly informs the jury possession of stolen property may tend to prove robbery rather than theft—was rejected by the state high court in *People v. Lang* (1989) 49 Cal.3d 991 [264 Cal.Rptr. 386, 782 P.2d 627]. There, the jury was instructed that giving a false explanation for the possession of stolen property is a circumstance that may be considered with other evidence in deciding if the defendant is guilty of the offense charged, where the offense charged was robbery. (*Id.* at p. 1024 & fn. 16.) The defendant argued the instruction was erroneous in permitting an inference that he was guilty of robbery rather than grand theft. The high court disagreed, explaining: "The instruction did not state that defendant's false statements supported an inference of guilt *only* as to the offense of robbery. The instruction was therefore a correct statement of law because, as defendant concedes, the false-statement evidence would support an inference of guilt as to either grand theft or robbery. Nothing in the instruction's language suggested it was intended to assist the jury in deciding which of these offenses defendant committed. . . ." (*Id.* at p. 1024.)

Regarding the second alleged defect, defendant asserts CALCRIM No. 376 "misstates the common law permissive inference of guilt of theft from possession of recently stolen property by removing the requirement that such possession must be unexplained." He cites two cases, which he contends establish a common law requirement that the possession must be unexplained, *People v. McFarland* (1962) 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449] (*McFarland*), and *Barnes v. United States* (1973) 412 U.S. 837 [37 L.Ed.2d 380, S.Ct. 2357] (*Barnes*). However, neither case supports defendant's assertion.

In *McFarland*, the court stated the following rule: "Where recently stolen property is found in the conscious possession of a defendant who, upon being questioned by the police, gives a false explanation regarding his possession or remains silent under circumstances indicating a consciousness of guilt, an inference of guilt is permissible and it is for the jury to determine whether or not the inference should be drawn in the light of all the evidence." (*McFarland, supra,* 58 Cal.2d at p. 755.) However, before stating the foregoing rule, the state high court in *McFarland* acknowledged the more general rule that possession of recently stolen property together with other corroborating evidence is sufficient to infer guilt. (*Id.* at p. 754.) The court went on to state that a failure to explain or a false explanation of such possession is one type of corroborating evidence. In other words, the court in *McFarland* did not say that possession must be unexplained to be relevant but that the lack of an explanation for possession is one type of corroborating evidence sufficient to support a conviction. (*Ibid.*)

In *Barnes*, the jury was instructed that " '[p]ossession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.' " (*Barnes, supra,* 412 U.S. at pp. 839–840 [37 L.Ed.2d at p. 384].) The United States Supreme Court found no problem in this instruction, which permitted an inference of guilt from unexplained possession. In other words, as in *McFarland*, possession of recently stolen property coupled with a lack of explanation is sufficient to support conviction. However, the court did not say this was the only acceptable type of corroborating evidence.

▌ Defendant contends CALCRIM No. 376 permits the jury to completely ignore any explanation for the possession, no matter how compelling. Not so. The instructions in general tell the jury to consider *all* relevant evidence. CALCRIM No. 376 reiterates that the People must prove guilt beyond a reasonable doubt and contains no limitation on the evidence that may be considered in determining if the People have done so. Defendant was not restricted in any way from trying to explain away his possession of the stolen property.

Defendant argues conscious possession of stolen property that is satisfactorily explained provides no rational basis for an inference of guilt. However, assuming this is so, CALCRIM No. 376 does not create a presumption of guilt from possession alone, explained or unexplained. It expressly states a determination of guilt cannot be based on possession alone. Even where there is corroborating evidence, the instruction says only that this *may* be considered in determining guilt.

Turning now to the third alleged defect in the instruction—it improperly informs the jury that only slight corroborating evidence is sufficient to support a guilty verdict—defendant runs head-on into *McFarland*, one of the cases cited in support of his prior argument. In *McFarland*, the state high court stated corroborating evidence accompanying possession of recently stolen property need only be slight. (*McFarland, supra*, 58 Cal.2d at p. 754.)

Defendant acknowledges the jury in *McFarland* was instructed that corroborating evidence need only be slight, but asserts the court "did not give this instruction a ringing endorsement." He relies on the following passage from the opinion: "There can be no question that the instruction complained of was correct to the extent that it dealt with the incriminating effect of false explanations and statements constituting admissions, and such conduct on the part of defendant was shown to be present as to every count relating to possession except the one concerning the recently stolen toolbox, which defendant had in his possession at the same time and place as the recently stolen property involved in the other counts. In the light of the entire record, the instruction, although not worded as clearly as would have been desirable with respect to consideration of defendant's silence upon questioning by the police, cannot be said to have resulted in a miscarriage of justice." (*McFarland, supra*, 58 Cal.2d at pp. 759–760.)

Defendant's reliance on the foregoing passage is misplaced. It is clear the discussion does not concern the quantum of corroborating evidence necessary to support a conviction, but the danger of using a defendant's failure to explain possession of recently stolen property in light of his constitutional right to remain silent. On the question of the amount of corroborating evidence, the court said: "Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt." (*McFarland, supra,* 58 Cal.2d at p. 754.)

Defendant asserts other cases have interpreted *McFarland* as standing for the principle that "proof of conscious possession of recently stolen property simply leads to a permissible inference the person knew the property was stolen, but the jury must determine guilt in light of such inference as well as all of the evidence in the case." He cites *People v. Dupre* (1968) 262 Cal.App.2d 56 [68 Cal.Rptr. 525] (*Dupre*) and *Rollins v. Superior Court* (1963) 223 Cal.App.2d 219 [35 Cal.Rptr. 734] (*Rollins*). However, as we shall explain, these cases do not support defendant's assertion.

In *Dupre*, it was conceded the defendant was found in possession of recently stolen property and the question was whether she knew the property was stolen at the time. (*Dupre, supra*, 262 Cal.App.2d at p. 57.) She gave a rational explanation for how she came by the property honestly, and there was no evidence to suggest she knew it was stolen. (*Id.* at pp. 58–59.) Her conviction for receiving stolen property was reversed.

The only reference to *McFarland* in the opinion was to quote the rule discussed above about possession coupled with a false explanation or no explanation permitting an inference of guilt. (*Dupre, supra*, 262 Cal.App.2d at p. 59.) There was no discussion of conscious possession permitting an inference only that the person knew the property was stolen. Because there was no corroborating evidence of guilt in that case, there was no occasion to discuss the quantum of evidence necessary to support an inference of guilt.

In *Rollins*, the defendant sought a writ of prohibition to prevent the People from proceeding with a prosecution against him for burglary. Because there was no evidence the defendant had been found in possession of recently stolen property and he had never been questioned about the property, the court granted the petition. (*Rollins, supra*, 223 Cal.App.2d at p. 222.) As in *Dupre*, the only reference to *McFarland* in the case was to quote the rule of possession coupled with a false explanation. (*Ibid.*) Because there was no evidence of possession, there was no occasion to discuss the quantum of evidence necessary to support an inference of guilt.

Defendant attempts to refute other authorities supporting the rule that only slight corroboration is necessary to support evidence of possession of recently stolen property. However, we need not consider those authorities. *McFarland* establishes the rule that, because the possession of recently stolen property is so incriminating, only slight corroboration is needed to support an inference of guilt. Regardless of these other authorities and the cases on which they are based, the logic of the slight corroboration rule enunciated in *McFarland* remains sound. At any rate, we are bound by *McFarland* (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), and need look no further.

## XIV

### *CALCRIM No. 3145*

Defendant challenges CALCRIM No. 3145, the instruction defining the enhancement for use of a deadly weapon. As given here, it read: "If you find . . . Defendant Anderson guilty of the crime charged in Count I, you must then decide whether the People have proved the additional allegation

that the Defendant personally used a deadly or dangerous weapon during the commission or attempted commission of that crime. You must decide whether the People have proved this allegation for each crime and return a separate finding for each crime.

"A deadly or dangerous weapon is any object, instrument, or weapon that is inherently deadly or dangerous, or one that is used in such a way that it is capable of causing and likely to cause . . . great bodily injury.

"In deciding whether any object is a deadly weapon, consider all of the surrounding circumstances, including when and where the object was possessed, and where . . . the person who possessed the object was going, and whether the object was changed from its standard form and any other evidence that indicates whether the object would be used for a dangerous, rather than a harmless, purpose.

"Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm.

"Someone personally uses a deadly or dangerous weapon if he or she intentionally does any of the following:

"1. Displays the weapon in a menacing manner.

"The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation . . . has not been proved."

Defendant contends the foregoing instruction is defective in two ways: (1) it tells the jurors they *must* decide if the enhancement has been proved; and (2) it shifts the burden to him to prove a harmless purpose for the weapon. We disagree.

The first alleged defect concerns the first sentence of the instruction, which says that if the jury finds the defendant guilty of the underlying crime, it "must then decide" the enhancement allegation. Defendant argues this language could improperly coerce the jury into reaching a decision on the enhancement when it is unable to do so. However, as explained in connection with defendant's challenge to CALCRIM No. 200, another instruction, CALCRIM No. 3550, clarifies that the jury need only try and reach a decision on the matters at issue. Defendant argues there is no assurance the jury will follow CALCRIM No. 3550. However, we presume the jury followed the instruction as given. (*People v. Adcox, supra,* 47 Cal.3d at p. 253.)

As to the second alleged defect, defendant points to the third paragraph of the instruction, which states that, in deciding if the object is a deadly weapon, the jury should consider all of the surrounding circumstances, including "whether the object would be used for a dangerous, rather than a harmless, purpose." Defendant argues this language puts a burden on him to show the object has a harmless purpose. We disagree. The language in question cannot reasonably be read to shift the burden of proof to defendant. It merely states what the jury may consider. Any shifting of burden is expressly dispelled by the concluding sentences of the instruction: "The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation . . . has not been proven."

## XV

### *Reference to Jurors Collectively*

Defendant contends the CALCRIM instructions, as a whole, improperly refer to the jurors collectively as "you" rather than advising each juror of his or her duties. According to defendant, "[b]y addressing the jurors collectively, these instructions fail to assure each juror understands his or her right and duty to individually evaluate the witnesses." The People respond that use of the term "you" is "a highly effective way of communicating the instructions directly to each individual juror."

Without a reference to individual instructions in order to determine if use of the term "you" is misleading when considered in context, it is nearly impossible to evaluate defendant's claim. At any rate, we do not agree the term "you" necessarily reflects a collective reference. It can just as easily be understood by the individual juror as a reference to him or to her directly. Any juror being told, "[i]t is up to you exclusively to decide what happened based only on the evidence that has been presented to you in this trial," or "[y]ou must set aside any bias or prejudice you may have," can just as easily view this as a reference to him or her as to the jury as a whole. There is nothing inherently misleading in this terminology.

## XVI–XX[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante*, page 919.

## DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 10, 2007, S155148.