Filed 3/21/16  P. v. Stewart CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BILLY MARTIN STEWART, JR.,<br><br>    Defendant and Appellant. | F069716<br><br>(Super. Ct. No. BF152169A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Gary T. Friedman, Judge.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, R. Todd Marshall and Jeffrey Grant, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Billy Martin Stewart, Jr., was charged with assault with a firearm (Pen. Code, § 245, subd. (a)(2), count 1),[1] unlawful possession of a firearm by a felon (§ 29800, subd. (a)(1), count 2), unlawful possession of ammunition by a felon (§ 30305, subd. (a)(1), count 3), and receipt of stolen property (§ 496d, subd. (a), count 4). The information also alleged defendant committed the offenses charged in counts 1 and 2 while released on bond (§ 12022.1); defendant was armed with a firearm during the commission of the offenses charged in counts 3 and 4 (§ 12022, subd. (a)(1)), and as to all counts, defendant suffered a prior prison commitment within the meaning of section 667.5.

A jury found defendant guilty of counts 2, 3, and 4. In addition, the court found true the bail enhancement as to count 2. Defendant was sentenced to five years eight months in prison.

On appeal, defendant contends the trial court erred (1) in failing to give a self-defense instruction on counts 2 and 3; and, (2) by giving a flight instruction. We disagree and affirm the judgment.

## FACTS

Nathan Flud II (Senior) and Nathan Flud III (Junior) both owned several water trucks. On November 26, 2013, Junior noticed one of his water trucks was missing, and reported it stolen to police.

On December 11, 2013, Junior received a phone call from an individual who believed the missing truck was parked at a Denny's restaurant near Highway 99. The Fluds drove separately to Denny's and, upon arriving, saw the water truck parked in the parking lot. Junior had brought a .22 rifle with him, as well as a .45-caliber handgun.

Junior and Senior parked across the street from the Denny's and surveilled the truck for several hours. Senior believed whoever had stolen the truck was using it to steal

---

[1]All undesignated statutory references are to the Penal Code unless otherwise indicated.

2.

diesel fuel, and he wanted to catch the perpetrator on film. Senior put on a black hat with the words "SWAT" or "FBI" across the front of it.

When the water truck began moving, the Fluds followed it. Junior and Senior saw two men in the truck: defendant, who was driving, and an unidentified male passenger.

Junior and Senior followed the vehicle to a Mobil gas station. Senior exited his truck and began yelling at defendant. Senior initially identified himself as law enforcement, but then admitted he was the owner of the water truck. The passenger of the truck, who had been pumping fuel, stopped and began to approach Senior. Senior armed himself with Junior's rifle, which he had previously put in his truck, and told the men to get their hands out of their pockets. Defendant complied, but his passenger fled. Senior ordered defendant to get on the ground and defendant complied.

As Senior searched defendant's pockets, defendant pulled out a small gun from his own back pocket. A struggle ensued between Senior and defendant, at which time one of the guns discharged. After the shot, Senior handed Junior his rifle and two bystanders helped Senior subdue defendant. Defendant threw or slid his gun across the pavement. Junior called 911.

Deputy Brent Nelson with the Kern County Sheriff's Department responded to the incident. One of the Fluds told Nelson he was detaining defendant and there was a gun on the ground. After he detained defendant, Nelson picked up the gun, a derringer, and observed a live round of ammunition in the chamber. He performed a dry fire with the gun and noted it appeared to be operational.

At trial, gas station attendant Antonio Vargas testified defendant walked into the Mobil gas station on December 11, 2013, and paid for diesel fuel on a pump where a large water truck was parked. Vargas observed the altercation between Senior and defendant. He and another gas station employee went into a back room after they heard a gunshot. Vargas testified defendant returned to the gas station at a later date and demanded a refund for the diesel fuel he purchased on December 11th.

3.

Several days after the incident, Junior and Senior examined the water truck and noted the key switch had been pulled out and the radio had been removed. Senior explained the vehicle had to be hot-wired for the engine to turn over.

At trial, Senior admitted he had a prior felony conviction, and the trial court advised the jury Senior was testifying under a grant of immunity.

## DISCUSSION

**1. The Self-defense Instruction**

Defendant argues the trial court erred in failing to instruct the jury on self-defense as it related to the charges of felon in possession of a firearm and felon in possession of ammunition. We are not persuaded.

We initially observe defendant's claim was not raised at trial and is, therefore, forfeited on appeal. (*People v. Anderson* (2007) 152 Cal.App.4th 919, 927 ["[f]ailure to object to instructional error forfeits the issue on appeal unless the error affects defendant's substantial rights"]; *People v. Watson* (1956) 46 Cal.2d 818, 834-835 [the question is whether there is a reasonable probability the error "affected the outcome of the case resulting in a 'miscarriage of justice'"].) Nonetheless, even assuming defendant had raised a timely objection, a self-defense instruction was not warranted here.

A trial court has a sua sponte duty to instruct on self-defense "'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.'" (*People v. Breverman* (1998) 19 Cal.4th 142, 157, italics omitted.) Here, the defense put forth no evidence giving the trial court notice defendant was relying on a theory of self-defense as to counts 2 and 3 pertaining to his possession of the loaded derringer pistol. In fact, the court expressly asked defense counsel whether he was relying on a self-defense theory as to defendant's charges for possession of a firearm and possession of ammunition by a felon, and defense counsel replied he was not.

In addition, we do not find substantial evidence to support a self-defense instruction. Defendant was convicted of unlawful possession of a firearm by a felon (§ 29800 subd. (a)(1)), and unlawful possession of ammunition by a felon (§ 30305, subd. (a)(1)). Pursuant to CALCRIM No. 2514, an individual who is statutorily prohibited from possessing a firearm may do so for purposes of self-defense, under narrowly circumscribed conditions.

In *People v. King* (1978) 22 Cal.3d 12, 15 (*King*), our Supreme Court held a defendant charged with possession of a firearm by a felon could assert self-defense. The defendant in *King* was a guest at a party at an apartment. (*Id*. at p. 16.) A fight broke out and a group of uninvited guests began pounding on the door of the apartment, threatening to break it down. (*Id*. at pp. 17-18.) One of the uninvited party guests threw a barbeque grill through the window of the apartment. (*Id*. at p. 18.) A woman gave the defendant a pistol from her purse and he fired the gun in an attempt to frighten the intruders. (*Ibid*.)

The defendant, a felon, was charged with possession of a concealable firearm by a felon (former § 12021) and two counts of assault with a deadly weapon. (*King*, *supra*, 22 Cal.3d at pp. 19-20.) At trial, the court instructed the jury on self-defense as to the assault charges, but the court refused the defendant's request for a self-defense instruction on the firearm possession charge. (*Ibid*.) The defendant was found guilty on the charge of felon in possession of a firearm. (*Ibid*.)

The Supreme Court held the defendant was entitled to a self-defense instruction and reversed his conviction. (*King*, *supra*, 22 Cal.3d at pp. 26-27.) The court explained in enacting former section 12021, the Legislature did not intend to exclude persons who fall within the purview of the statute from the right to use a firearm for self-defense or the defense of others. (*King*, at p. 15.) The court held a self-defense instruction is available where (1) the defendant reasonably believed he or she was in immediate danger of great bodily injury; (2) the immediate use of force was necessary to defend against that danger; (3) the firearm became available to the defendant without predesign or planning; (4) the

5.

possession was no longer than necessary for self-defense; (5) no other means of avoiding the danger were available; and (6) the use was reasonable under the circumstances. (*King*, at p. 24.)

King is distinguishable from the instant case for three reasons.

First, unlike in *King*, the defendant here did not request the self-defense instruction even after the trial court specifically asked him about it.

Second, possession for self-defense conflicted with defendant's defense, which was predicated on the theory he never possessed any firearm. During trial, defense counsel theorized and argued the derringer pistol belonged to Junior or Senior, rather than defendant. Senior testified during trial he had inherited a gun from his father. Defense counsel used Senior's testimony to suggest in his closing argument the derringer actually belonged to, and was in the possession of, Senior. However, no evidence was presented as to the type of gun inherited by Senior, nor was there any evidence Senior or Junior was armed with anything other than a .22 rifle and a .45-caliber handgun.

Third, here, unlike in *King*, there is no evidence defendant was in possession of a gun for only a brief period of time and without prior planning, or that defendant's possession of the gun was for no longer than necessary for his defense. Indeed, the evidence at trial only supported the conclusion defendant was in possession of the firearm prior to the incident. Senior testified defendant pulled a small gun out of his back pocket as Senior searched him. Junior testified defendant slid an object out of his back pocket during the struggle. After he approached, he realized the object was a gun. There was no evidence defendant's possession of the firearm and ammunition was brief and without planning, or that his possession was no longer than necessary for self-defense. Presumably, this evidence is what caused defense counsel to eschew a self-defense theory for defendant's possession of the derringer. Therefore, the trial court did not err in failing to give a self-defense instruction on counts 2 and 3.

## 2.      The Flight Instruction

Defendant also contends the trial court erred in instructing the jury on flight under CALCRIM No. 372.  His claim is without merit.

CALCRIM No. 372 provides the following, in part:

"If the defendant fled [or tried to flee] (immediately after the crime was committed/ [or] after (he/she) was accused of committing the crime), that conduct may show that (he/she) was aware of (his/her) guilt.  If you conclude that the defendant fled [or tried to flee], it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled [or tried to flee] cannot prove guilt by itself."

Flight does not require a defendant to physically run from a scene, nor does it require the defendant to reach a place of safety.  (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055.)  "A flight instruction 'is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt.'"  (*Ibid*.)  In determining whether movement was motivated by a consciousness of guilt, "the jury may consider not only acts of successful flight but also acts constituting attempted flight."  (*People v. Kessler* (1968) 257 Cal.App.2d 812, 814 (*Kessler*).)

Outside the presence of the jury, the prosecutor requested the trial court give an instruction on flight.  The prosecutor argued the instruction was appropriate because defendant attempted to get away during his struggle with Senior.[2]  This claim was bolstered by a computer-aided dispatch report in relation to the incident where Junior told a 911 operator defendant was "trying to run."  From this evidence, the jury could either infer defendant was trying to flee the scene because of a consciousness of guilt, but was restrained from doing so by Senior and two bystanders, or defendant was trying to get away from the altercation with Senior.

---

[2]We note defendant's argument the flight instruction was given because of the passenger's flight.  This is incorrect.  The record indicates the trial judge asked the prosecutor whether a separate jury instruction, CALCRIM No. 373, was required as to the passenger.  CALCRIM No. 373 instructs the jury not to speculate why a coparticipant in a crime is not joined as a codefendant in a particular trial.

In *Kessler*, *supra*, 257 Cal.App.2d 812, the defendant threatened the victim with a large tire iron and told her to come with him. The victim, a large Amazonian woman, grabbed the tire iron and shook the defendant by the collar. The defendant told a witness to "'Get this [woman] off of me.'" The victim restrained the defendant until police arrived. Several witnesses testified the defendant appeared to be trying to get away from the victim, and it initially appeared the victim, who had a reputation for belligerence and aggressiveness, was attacking the defendant. (*Id.* at pp. 813-814.)

The appellate court upheld a flight instruction given by the trial court. (*Kessler*, *supra*, 257 Cal.App.2d at p. 814.) In so doing, the court found the defendant's conduct was a clear and unequivocal act demonstrating attempted flight, notwithstanding the fact the jury could also reasonably infer the defendant was attempting to get away from the victim. (*Ibid.*)

Here, as in *Kessler*, we find sufficient evidence supported the flight instruction. Senior testified he and two bystanders had to hold defendant down, and Junior testified defendant was trying to get away. From this evidence, the jury could reasonably infer defendant was attempting to flee the scene because of a consciousness of guilt.

Even if the flight instruction were improper, we find any error as a result was harmless. Here, again, we observe defense counsel failed to object to the instruction below, and the issue is forfeited on appeal. (*People v. Anderson* (2007) 152 Cal.App.4th 919, 927.) Under the standard articulated in *Watson*, reversal is not warranted unless there is a reasonable probability the defendant would have achieved a more favorable result at trial had the error not occurred. (*People v. Watson*, *supra*, 46 Cal.3d at p. 836.) We find no such probability here.

Defendant asserts the instruction was prejudicial because it allowed the jury to conclude defendant was guilty of receipt of stolen property because of his flight. However, CALCRIM No. 372 plainly states the jury must first conclude whether the defendant actually fled. Assuming the jury here decided defendant attempted to flee, the

8.

instruction also provides the jury may decide the meaning and importance of flight, but evidence of flight, by itself, cannot be used to prove guilt. Accordingly, it is highly unlikely a jury would have understood the instruction to mean flight presupposed commission of the crimes charged. (See *People v. Daener* (1950) 96 Cal.App.2d 827, 833; see also *People v. Paysinger* (2009) 174 Cal.App.4th 26, 31 [flight instruction does not relieve prosecution of burden to prove guilt beyond reasonable doubt or undermine defendant's presumption of innocence].)

In addition, upon the record before us, we do not agree with defendant's assertion the instruction may have tipped the balance in an otherwise weak case. The evidence here points overwhelmingly toward defendant's guilt, and the flight instruction was only one among many factors supporting the jury's verdict.

"[T]o sustain a conviction for receiving stolen property, the prosecution must prove (1) the property was stolen; (2) the defendant knew the property was stolen; and, (3) the defendant had possession of the stolen property." (*People v. Land* (1994) 30 Cal.App.4th 220, 223.) Possession is satisfied where "the defendant acquires a measure of control or dominion over the stolen property." (*Id*. at p. 224.)

In the instant case, the water truck's status as stolen property was undisputed. Defendant was positively identified by both Junior and Senior as the driver of the vehicle. In addition, Vargas identified defendant as the man who purchased diesel fuel on a pump where a water truck was parked. Vargas also stated defendant returned to the gas station on a later date to request a refund of his purchase. Where a defendant is the driver of a stolen vehicle, there is no question he or she had possession of the car. (*People v. Land*, *supra*, 30 Cal.App.4th at p. 223, fn. 2.)

From defendant's possession, the jury could also infer defendant knew the vehicle was stolen. (*People v. Martin* (1973) 9 Cal.3d 687, 696 ["Possession of a stolen item in and of itself is a factor which could assist a reasonable person in formulating a strong suspicion that the recipient knew the item was stolen"].) Moreover, Junior and Senior

testified when the truck was recovered, the ignition system and radio had been torn out. These conditions would have put a reasonable person on notice the vehicle he or she was driving was stolen.

Strong evidence supported defendant's conviction for receipt of stolen property. As such, even if the flight instruction were improper, we find no prejudice as a result.

## DISPOSITION

The judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
HILL, P.J.


_____
LEVY, J.