Filed 10/22/20  P. v. Flores CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B304177 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA098533) |
| v. | |
| ERIC LUIS FLORES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hector M. Guzman, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted defendant and appellant Eric Luis Flores of pandering, in violation of Penal Code section 266i, subdivision (a)(6).[1] We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*

In 2018, the Torrance Police Department Vice and Narcotics Unit maintained an Instagram social media account in the name of "Jacklyn Snow," as part of undercover operations targeting pimping and prostitution. The profile picture for the Snow account was of a buxom blonde woman. The account also displayed various photographs, a video, and several emojis, including a money bag and two feet with a downward-pointing arrow. According to Torrance Police Detective Andrew Lee, who testified as an expert, the feet and arrow emojis stood for "ten toes down," which was a coded reference to prostitution, indicating the prostitute was working by walking a "blade." A "blade" is slang for an area where prostitutes walk up and down the street, seeking clients.

On May 21, 2018, Flores, using an Instagram account named "Floezy_ytk," sent a friend request and a message to the Snow account. It stated, "Thanks for adding choose-up, little babe, what state you in?" In street vernacular commonly associated with prostitution and pimping, a "choose-up" is a fee required to be paid by a prostitute when she selects a pimp.

On May 24, 2018, Flores sent a message to the Snow account stating, "Send da fee, bitch." Lee, posing as Snow, replied, "Ha, what the fee like?" and "What I get for that?" Flores

---

[1]     All further undesignated statutory references are to the Penal Code.

2

replied, "3K. Win." "Snow" then asked, "You got me a wifey?" and "You got that stable?" Flores replied affirmatively to both questions. In street slang associated with prostitution, a "wifey" is a co-prostitute who acts as a friend and companion to another prostitute. A "stable" is a group of prostitutes managed by the pimp. "Snow" then asked whether Flores was "gonna come scoop me up?" and if she would "need to walk some dusty-ass blade off Fig." Figueroa Street in Los Angeles, according to Lee, was known for prostitution activities. Flores replied, "Hell, no, we high class in O.C., baby." "Snow" replied, "What's in O.C.?" Flores answered, "Team Floezy, Main Street, Beach Boulevard, money on every block." According to Lee, Beach Boulevard in Orange County is known for prostitution. Flores added, "I have some tricks lined up." "Tricks," in street slang, refers to a prostitute's customers. Flores said, "I'll blend in, trust Daddy." Prostitutes commonly call their pimps their "Daddies."

During subsequent Instagram message conversations, "Snow" pretended to be in various locations in the Los Angeles area and Northern California, and discussed meeting with Flores. During one such conversation, "Snow" asked Flores how much she should charge when a customer wanted to bring a friend to participate in a sexual liaison, and when another customer wished to engage in "Greek," a slang term for anal sex. Flores suggested that "Snow" triple the price and charge "500 and up" in regard to the first scenario, although he was not sure; in regard to the second, he agreed "Snow" should "charge more." Flores stated that he could arrange for a photographer to take pictures of "Snow." In a message sent on June 9, 2018, "Snow" stated she had "$2,000 of the choose-up." Flores told her to send that money to him through MoneyGram. When "Snow" expressed hesitation

3

about sending money to someone she had never met, Flores said to forget about sending the money and suggested they meet and have a meal together. Flores and "Snow" did not further discuss the terms of a potential pimp-prostitute arrangement between them.

On June 11, 2018, Detective Erin Velarde, posing as Snow, spoke with Flores in a recorded telephone call, portions of which were played for the jury. Velarde said she was still in Northern California and could not make it to the Los Angeles area as planned. Flores told Velarde to go a Walmart store and send him a MoneyGram. When she protested she did not know how to make such a transaction, Flores called her a bitch, told her to "shut the fuck up," and explained the process. He stated that she needed to give him the MoneyGram confirmation number after making the transaction. When she asked questions, he said, "You talkin too mother fuckin much for me, bitch. I said do what the fuck I said. Do it. I didn't ask you all that extra shit, did I?" He admonished her to be sure to send the money, saying: "Bitch, don't play with me. Go do that shit like right the fuck now. You hear me?" and "you better be doing that shit ASAP." Flores told her to send the money to "Eric Flores." He also stated, "I'm tryin to get you situated," and "I got . . . all type of shit lined up for you when you get down here, so." The officers did not send the MoneyGram.

On July 3, 2018, "Snow" messaged Flores, telling him she was in Torrance. Detective Lee, posing as Snow, arranged that Flores would come pick Snow up at a Howard Johnson's hotel in Torrance. Flores indicated, in another Instagram message, that he was on his way. Officers were waiting at the hotel, and arrested him when he arrived. Detective Lee recognized Flores

4

by the photo on the "Floezy" Instagram account, and by his voice. The hat Flores wore was the same one depicted in his Instagram account.

2. *Procedure*

On November 27, 2018, Flores was charged by information with pandering in violation of section 266i, subdivision (a)(6), by attempting to procure "Jane Doe" for the purpose of prostitution. The information also alleged that Flores had suffered a prior "strike" conviction for robbery. (§§ 211, 667, subd. (d), 1170.12, subd. (b).)

Jury trial commenced in November 2019. In pretrial motions, the trial court granted the defense request to bifurcate the prior conviction allegations and denied the defense motion to preclude impeachment of Flores with the prior robbery conviction, should he choose to testify. Prior to trial, on September 12 and October 22, 2019, the trial court denied Flores's two *Marsden* motions.[2]

The jury convicted Flores of pandering by agreeing to receive money or something of value, for attempting to persuade or procure "Jane Doe" for the purpose of prostitution, in violation of section 266i, subdivision (a)(6). Thereafter, in a bifurcated trial, the jury found Flores had suffered a prior conviction for robbery.

The trial court granted Flores's *Romero* motion[3] and sentenced him to the low term of three years in prison. It imposed a $300 restitution fine, a suspended parole revocation restitution fine in the same amount, a $30 court facilities

---

[2]   *People v. Marsden* (1970) 2 Cal.3d 118.

[3]   *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

assessment, and a $40 court operations assessment. Defense counsel objected on the ground that Flores "ha[d] no ability to pay." The trial court offered to conduct an ability-to-pay hearing, but counsel declined.

Flores timely appealed.

DISCUSSION

After review of the record, Flores's court-appointed counsel filed an opening brief that raised no issues and requested that this court conduct an independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436. Appellant was advised that he had 30 days to submit by brief or letter any contentions or argument he wished this court to consider.

On August 4, 2020, Flores submitted a supplemental brief. Therein, he makes a variety of assertions, none of which demonstrates any legal or reversible error. He mentions, without further explanation, *Strauder v. West Virginia* (1879) 100 U.S. 303, *Batson v. Kentucky* (1986) 476 U.S. 79, *Brady v. Maryland* (1963) 373 U.S. 83, and "veteran statutes." By citing *Strauder* and *Batson,* Flores presumably intends to raise a claim relating to racial or ethnic discrimination in jury selection. But Flores does not aver that any *Batson* motion was made and denied at trial, nor does he otherwise explain the basis for his claim or offer argument or authority to support it. Consequently, this contention fails. (See *People v. Anderson* (2007) 152 Cal.App.4th 919, 929 [failure to provide argument or cite authority for it forfeits the issue on appeal].)

*Brady v. Maryland* requires that the prosecution disclose to the defense all exculpatory, material evidence known to the prosecution team. (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 668.) Flores fails to explain the basis for his *Brady* claim, and

the record reflects no *Brady* violation.  As to the vague reference to "veteran statutes," this contention is so nonspecific as to defy review.  (See *People v. Kraft* (2000) 23 Cal.4th 978, 1049–1050.) The same is true as to Flores's contentions that his First Amendment rights were violated, and that his trial was "unfair" and "unconstitutional."

Flores next lists "absense of probable cause—absense of intent is unlawful" [*sic*] as an issue he wishes to raise.  To the extent he intends to assert that the evidence presented at the preliminary hearing failed to demonstrate probable cause, the record does not reflect that he brought any challenge to the preliminary hearing prior to trial.  Therefore, any such contention is waived.  (*People v. Alcala* (1984) 36 Cal.3d 604, 628; *People v. Shaw* (1986) 182 Cal.App.3d 682, 684.)  In any event, our review of the preliminary hearing reveals no evidentiary deficiency.  It is unclear what Flores means by his reference to "absen[c]e of intent," but the court and parties agreed the charged offense was a specific intent crime, and the jury was so instructed.

Flores asserts that he is innocent, and requests that this court "file a motion to drop all charges" against him or order "a reexamination of evidence by honest investigation."  He also asserts that the evidence was unreliable and unpersuasive.  We interpret these assertions as a challenge to the sufficiency of the evidence.

When determining whether the evidence was sufficient to sustain a criminal conviction, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable

7

trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' " (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1104.) The same standard of review applies when the prosecution relies on circumstantial evidence. (*People v. Salazar* (2016) 63 Cal.4th 214, 242.) " ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt." ' " (*People v. Abilez* (2007) 41 Cal.4th 472, 504.) Unless physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a verdict. (*People v. Jones* (2013) 57 Cal.4th 899, 963.)

Flores's conviction is supported by substantial evidence. The evidence showed Flores agreed to receive money from a person he believed to be Jacklyn Snow, a prostitute, as a fee for him to become her pimp, with the understanding he would facilitate her work as a prostitute by finding her customers and showing her a lucrative area in which to ply her trade. He promised that he had "tricks" lined up for her, and that the area she would work for him was "high class," with "money on every block." A person may violate section 266i, subdivision (a), even if the targeted person is already an active prostitute or is an undercover police officer. (*People v. Zambia* (2011) 51 Cal.4th 965, 970, 981.) Thus, the evidence was sufficient to prove Flores agreed to receive money in exchange for attempting to procure "Jane Doe" for the purpose of prostitution. (§ 266i, subd. (a)(6); *People v. Campbell* (2020) 51 Cal.App.5th 463, 484 ["Pandering is 'the business of recruiting a prostitute, finding a place of business

8

for a prostitute, or soliciting customers for a prostitute,' " and comprises a broad range of conduct]; see *People v. Almodovar* (1987) 190 Cal.App.3d 732, 740–741.)

Finally, Flores complains that his trial counsel provided ineffective assistance by hiding and withholding "key mitigating evidence that could prove [his] innocence," "incriminate[ing]" him during closing argument, and failing to inform the jury that he was a Navy veteran. To establish ineffective assistance of counsel, a defendant must show counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. (*People v. Bell* (2019) 7 Cal.5th 70, 125.)

Flores fails to meet this burden here. Counsel did not provide ineffective assistance by failing to inform the jury that Flores was a Navy veteran, as such evidence was irrelevant to any issue at trial. (See Evid. Code, §§ 210, 350.) We have reviewed counsel's closing argument, and counsel did not say anything that can be construed as improperly "incriminating" Flores. Counsel's argument that the evidence supported an alternate conclusion—that Flores was not really attempting to recruit "Snow" as a prostitute, but instead sought a sexual liaison with her or hoped to induce her to send him money—was a reasonable tactical choice, given the evidence counsel had to work with. We accord great deference to counsel's tactical decisions and presume that counsel's actions fell within the broad range of reasonableness and can be explained as a matter of sound trial strategy. (*People v. Mickel* (2016) 2 Cal.5th 181, 198; *People v. Bell*, *supra*, 7 Cal.5th at p. 125; *People v. Gamache* (2010) 48

9

Cal.4th 347, 392–393 [sensible concessions during argument are an acceptable and often necessary tactic].)

Flores's contentions that counsel hid or withheld evidence turn on matters outside the record, and therefore must be raised in a petition for writ of habeas corpus. (*People v. Duong* (2020) 10 Cal.5th 36, 56 ["Any claim of ineffective assistance based on evidence not in the trial record must be made in a habeas corpus petition"]; *People v. Salcido* (2008) 44 Cal.4th 93, 172.)

We have examined the record, and are satisfied no arguable issues exist and Flores's attorney has fully complied with the responsibilities of counsel. (*People v. Kelly* (2006) 40 Cal.4th 106, 125–126; *People v. Wende*, *supra*, 25 Cal.3d at pp. 441–442.)

DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.

10