Filed 9/16/21  P. v. Limon CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JONATHAN ISAIAH LIMON,<br><br>    Defendant and Appellant. | 2d Crim. No. B299877<br>(Super. Ct. No. 18CR10195)<br>(Santa Barbara County) |

Jonathan Isaiah Limon appeals from the judgment entered after a jury had convicted him of the willful, deliberate, and premeditated attempted murder of John Doe 2 (count 2 – Pen. Code, §§ 187, subd. (a), 189);[1] assault with a semiautomatic weapon upon John Doe 2 (count 5 – § 245, subd. (b)); robbery of John Doe 3 (count 3 – § 211); and assault with a deadly weapon, to wit, a knife, upon John Doe 1 (count 4 – § 245, subd. (a)(1)).  As to the attempted murder, the jury found true an allegation that

---

[1] All statutory references are to the Penal Code.

appellant had personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)).  As to the assault with a deadly weapon, the jury found true an allegation that appellant had personally inflicted great bodily injury (§ 12022.7, subd. (a)).  As to all counts, the jury found that the offenses had been committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).  Appellant was sentenced to a determinate term of four years plus an indeterminate term of 40 years to life.

Appellant contends:  (1) The trial court erroneously denied his request to instruct on self-defense as to count 4, assault with a deadly weapon, because the victim hit him with a shovel before appellant stabbed the victim.  (2) The trial court violated his due process rights by giving the standard jury instruction on evaluating eyewitness identification without deleting language concerning witness certainty.  (3) The case should be remanded to the trial court with directions to afford him an opportunity to make a record of mitigating youth-related evidence pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*).  We affirm without prejudice to appellant's filing a motion in the trial court under section 1203.01 for the purpose of making a record of such evidence.

*Relevant Facts*

Count 4 – Assault with a Deadly
Weapon upon John Doe 1[2]

John Doe 1 was a member of the West Park criminal street gang.  Appellant was a member of the Northwest criminal street gang.  Appellant's gang moniker was "Vago."  A gang expert testified:  "West Park and Northwest are very bitter rivals. . . .

---

[2] Appellant was acquitted on count 1, which charged him with the attempted murder of John Doe 1.

2

[W]e've had murders.  We've had shootings.  We've had stabbings.  They can't stand each other . . . ."

In December 2016 Officer Brandan Gonzalez went to a location in response to a report of a fight.  Two persons – S.S. and N.D. – ran toward him "yelling . . . their friend needed help."  The friend was 15-year-old John Doe 1.  He had several stab wounds.

John Doe 1 told Officer Reid Goeckner that "three or four subjects [had] attacked him in [an] alleyway."  The suspects had shouted, "'Fuck West Park, fuck Northwest.'"  John Doe 1 did not recall being stabbed and did not identify his assailants.

N.D. testified as follows:  At the time of the stabbing, he was an active member of West Park.  S.S. "was . . . a West Park member or associate."  N.D., S.S., and John Doe 1 were passengers in a vehicle that was being followed by another vehicle.  The occupants of the other vehicle were from Northwest and wanted to fight the occupants of N.D.'s vehicle.  The occupants of both vehicles were throwing gang signs at each other.  N.D.'s vehicle stopped in an alley.  N.D. assumed that "[t]he guys from Northwest" were going to follow the vehicle into the alley.  N.D. and S.S. got out of the vehicle.  John Doe 1 remained inside with the driver, "Nene."  John Doe 1 "had a shovel in his hands" or "was . . . reaching for the shovel."  N.D. and S.S. climbed over a fence along the side of the alley.  N.D. heard a "car come" into the alley.  He "heard people yelling 'Northwest.'"  Because of the fence, he could not see what was happening in the alley.  When the yelling stopped, N.D. and S.S. climbed back over the fence into the alley.  N.D. saw John Doe 1 in the alley.  Blood was "coming through [his] sweater."  When John Doe 1 was in the hospital, he sent a Facebook message to

N.D. saying that Vago had stabbed him.  N.D. identified appellant as Vago.

J.R. 1 was a member of West Park.  He testified that John Doe 1 had said that Vago had stabbed him.  J.R. 1 identified appellant as Vago.  J.R. 1 knew appellant because they had been housed together for about one year in the same dorm at Los Prietos Boys Camp.

The day after the stabbing, John Doe 1 and J.R. 2 had a conversation via messages on Facebook.  John Doe 1 said: "'[T]hey [the Northwest gang members in the other vehicle] followed us . . . .  They went by [our] car and said Fuck West Park. . . .  [W]e went back to [the alley] and [N.D.] got off with the other fool [S.S.].  Nene and I stayed, and shit, then they came.  Vago rushed me a bit, then I got a shovel and hit him three times.  Then somebody grabbed me and they took the shovel.  That's when Vago stuck me, because my neck got wet and started hurting.  Jesse [apparently one of the Northwest gang members] got my knee and arm and back . . . and I couldn't get up.  I was on the floor and they kept rushing me.  Then somebody hit me with a shovel on my dome [head] because my eyesight went black.  After that, they all left, and Jesse was still hitting me till Nene stopped it.'"  "'I got hit with a bat on my knee and back.  It's hard for me to walk.'"

In a Facebook message to a different person, A.G., John Doe 1 said that four persons, including Vago, had attacked him.  He had been stabbed once in the neck and seven times in the back.

<u>Counts 2 and 5 – Attempted Murder of and Assault</u>
<u>with a Semiautomatic Firearm upon John Doe 2</u>

John Doe 2 was 16 years old.  He was not a gang member. While he was walking home one evening, a car stopped alongside him.  Appellant got out of the car.  John Doe 2 "recognized his face from junior high school."  When John Doe 2 was in seventh grade, appellant was in eighth grade.

Someone inside the car said to John Doe 2, ""What's up? You bang?""  John Doe 2 replied, "'I don't bang, but what's up?'" People in the car said, "'Fuck that, fool, he bangs.'"  Appellant aimed a gun at John Doe 2 and shot him five times.  The shots were fired in rapid succession.  John Doe 2 fell to the ground. The next day, appellant bragged that the shooting was "'All me.'"

<u>Count 3 – Robbery of John Doe 3</u>

J.F., who was 14 years old, and her 12-year-old brother, John Doe 3, were walking home.  A car pulled alongside them. Someone inside the car asked, "'Where are you from? "  "'Do you bang?'" John Doe 3 answered, "'No.'"  He heard someone say "'Northwest.'"

"[F]our guys stepped out of the car."  They were yelling, "'Fuck West Park.'"  J.F. told her brother to run.

Two persons from the car ran toward John Doe 3, who tried to run away.  The two persons caught up to him.  They demanded his hat, cellphone, and password for the phone.  John Doe 3 complied with the demand.  The two persons then walked back toward the car.

The robbery occurred during the late afternoon.  That night, John Doe 3 watched a YouTube music video depicting members of Northwest.  Appellant was in the video.  John Doe 3 recognized appellant as one of the persons who had robbed him.

The prosecutor asked John Doe 3, "[H]ow certain are you that the person you saw on that video was the person that stole your cell phone and your hat?" John Doe 3 replied, "I was 100 percent sure."

*Trial Court's Denial of Appellant's Request to*
*Instruct on Self-Defense as to Count 4*

The trial court denied appellant's request to give CALCRIM No. 3470 on self-defense. CALCRIM No. 3470 provides in relevant part: "The defendant acted in lawful self-defense if: 1. The defendant reasonably believed that he was in imminent danger of suffering bodily injury; 2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger; AND 3. The defendant used no more force than was reasonably necessary to defend against that danger."

Appellant contends that the trial court erroneously refused to instruct on self-defense as to count 4 – assault with a deadly weapon upon John Doe 1. Appellant told the court that his claim of self-defense was based on evidence that John Doe 1 had "hit him multiple times . . . with a shovel." In the Facebook message sent to J.R. 1, John Doe 1 said: "Vago rushed me a bit, then I got a shovel and hit him three times. Then somebody grabbed me and they took the shovel. That's when Vago stuck me . . . ." The trial court ruled, "The evidence [concerning John Doe 1's use of the shovel] is not sufficient to raise reasonable inferences of self-defense, it essentially would be speculative for a jury . . . ."

"[T]he trial court is required to instruct on a defense . . . only if substantial evidence supports the defense. [Citations.] . . . On review, we determine independently whether substantial evidence to support a defense existed." (*People v. Shelmire* (2005) 130 Cal.App.4th 1044, 1054-1055.) "Evidence is substantial if a

6

reasonable jury could find the existence of the particular facts underlying the instruction." (*People v. Lee* (2005) 131 Cal.App.4th 1413, 1426.) "In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence . . . ." (*People v. Salas* (2006) 37 Cal.4th 967, 982.)

Substantial evidence does not support a jury instruction on self-defense. Appellant was not entitled to the instruction because he initiated the gang confrontation by seeking out appellant for the purpose of fighting him. John Doe 1 hit appellant with a shovel in self-defense when appellant "rushed" him. "It is well established that the ordinary self-defense doctrine—applicable when a defendant *reasonably* believes that his safety is endangered—may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical assault or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified." (*In re Christian S.* (1994) 7 Cal.4th 768, 773, fn. 1.)

In his reply brief appellant argues: "A defendant does not lose the right to defend himself against deadly force if he starts a fight. An aggressor using non-deadly force (such as 'rushing' someone) who meets with deadly force in response (an attack with a shovel) is entitled to defend himself with deadly force. [Citation.]" (See CALCRIM No. 3471 ["if the defendant used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force"].)

The evidence is insufficient to show that John Doe 1 used deadly force when he hit appellant with the shovel. A shovel is not an inherently deadly weapon. (*People v. Aledamat* (2019) 8 Cal.5th 1, 6 ["Because a [shovel] can be, and usually is, used for innocent purposes, it is not among the few objects that are inherently deadly weapons"].) "'In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue.'" (*In re B.M.* (2018) 6 Cal.5th 528, 533.) Here, there is no evidence as to the nature of the shovel and the manner in which John Doe 1 used it to "hit" appellant. John Doe 1 did not say where he had hit appellant or how hard he had hit him.

Moreover, John Doe 1 said he had lost possession of the shovel when appellant stabbed him: "[S]omebody grabbed me and they took the shovel. That's when Vago stuck me . . . ." Thus, at the time of the stabbing, appellant had no reason to believe he was in imminent danger of suffering bodily injury from John Doe 1's use of the shovel. John Doe 1 had been disarmed by appellant's accomplices. Accordingly, the defense of self-defense was not available to appellant.

*CALCRIM No. 315*

The trial court gave CALCRIM No. 315, the standard jury instruction on factors to be considered in evaluating the truthfulness and accuracy of eyewitness identification testimony. Appellant claims that the instruction violated his federal and state due process rights because it included the following factor: "How certain was the witness when he or she made the identification?"

Appellant's claim is forfeited because he expressly requested that the court give CALCRIM No. 315 and did not ask that the instruction be modified to delete the certainty factor. In similar circumstances the California Supreme Court held that the defendant had forfeited a challenge to the certainty factor in CALJIC No. 2.92, the predecessor of CALCRIM No. 315. (*People v. Sanchez* (2016) 63 Cal.4th 411, 461 ["If defendant had wanted the court to modify the instruction [CALJIC No. 2.92], he should have requested it. The trial court has no sua sponte duty to do so"]; see also *People v. Ward* (2005) 36 Cal.4th 186, 213-214 [no sua sponte duty to modify wording of certainty factor in CALJIC No. 2.92].) CALJIC No. 2.92 provided that the jury should consider "'the extent to which the witness is either certain or uncertain of the identification.'" (*Sanchez, supra,* at p. 461.)

Appellant argues that he did not forfeit his claim because the inclusion of the certainty factor in CALCRIM No. 315 violated his due process rights and therefore "affected [his] substantial rights" within the meaning of section 1259. (See *People v. Valenzuela* (2011) 199 Cal.App.4th 1214, 1233 ["'"an appellate court may review any instruction given even though no objection was made in the lower court if the substantial rights of the defendant are affected . . .""']; *People v. Anderson* (2007) 152 Cal.App.4th 919, 927 ["Failure to object to instructional error forfeits the issue on appeal unless the error affects defendant's substantial rights"].)

Based on our Supreme Court's recent decision in *People v. Lemcke* (2021) 11 Cal.5th 644 (*Lemcke*), appellant's substantial rights were not affected. The Supreme Court concluded that the defendant had "failed to establish that the trial court's decision to include the certainty factor in CALCRIM No. 315 violated his due

9

process rights or otherwise constituted error under the circumstances presented here." (*Id*. at p. 669.) The Supreme Court reasoned: "[W]e find nothing in CALCRIM No. 315's instruction on witness certainty that operates to 'lower the prosecution's burden of proof.' . . . [T]he instruction does not direct the jury that 'certainty equals accuracy.' [Citation.] Nor does the instruction state that the jury must presume an identification is accurate if the eyewitness has expressed certainty. [Citation.] Instead, the instruction merely lists the witness's level of certainty at the time of identification as one of 15 different factors that the jury should consider when evaluating the credibility and accuracy of eyewitness testimony. The instruction leaves the jury to decide whether the witness expressed a credible claim of certainty and what weight, if any, should be placed on that certainty in relation to the numerous other factors listed in CALCRIM No. 315. Indeed, even [the defendant] acknowledges that, on its face, the instruction is 'superficially neutral.'"[3] (*Id*. at p. 657.)

*Request that Case be Remanded for a Franklin Proceeding*

Appellant was a juvenile when he committed the offenses. He "was sentenced in [July 2019, almost three years] after the

---

[3] Nevertheless, the Supreme Court stated: "[W]e believe there is a risk that the current version of the instruction will prompt jurors to infer that an eyewitness's certainty in an identification is generally a reliable indicator of accuracy. Accordingly, in the exercise of our supervisory powers, we direct our trial courts to omit the certainty factor from CALCRIM No. 315 until the Judicial Council has the opportunity to consider how the language might be better worded to minimize juror confusion on this point." (*Lemcke, supra,* 11 Cal.5th at p. 669.)

Supreme Court decided . . . *Franklin*[*, supra,*] 63 Cal.4th 261 . . . , which held that when a juvenile offender receives an indeterminate life sentence, the offender must be 'given adequate opportunity at sentencing to make a record of mitigating evidence tied to his youth.' (*Id.* at p. 269.)" (*People v. Medrano* (2019) 40 Cal.App.5th 961, 963 (*Medrano*).) The presentation of mitigating evidence at sentencing is referred to as a "*Franklin* proceeding." (*In re Cook* (2019) 7 Cal.5th 439, 450, fn. 3 (*Cook*).) The evidence may be considered at a later youth offender parole hearing. Notwithstanding his indeterminate sentence of 40 years to life, appellant is "eligible for release on parole at a youth offender parole hearing during [his] 25th year of incarceration." (§ 3051, subd. (b)(3).)[4]

Appellant requests that the matter be remanded to the trial court to give him an opportunity to make a record of mitigating youth-related evidence. "But because [appellant] was sentenced [almost three] years after *Franklin*, and because nothing in the record indicates that [he] lacked an adequate

---

[4] "The goal of [a *Franklin* proceeding] is to provide an opportunity for the parties to make an accurate record of the juvenile offender's characteristics and circumstances at the time of the offense so that the Board [of Parole Hearings], years later, may properly discharge its obligation to 'give great weight to' youth-related factors (§ 4801, subd. (c)) in determining whether the offender is 'fit to rejoin society' despite having committed a serious crime 'while he was a child in the eyes of the law' [citation]." (*Franklin, supra,* 63 Cal.4th at p. 284; see § 4801, subd. (c) ["the board . . . shall give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law"].)

11

opportunity at sentencing to make a record of mitigating youth-related evidence, we see no basis to order the [requested] relief . . . . We note, however, that the Supreme Court has recently held that a juvenile offender whose conviction and sentence are final may file a motion under section 1203.01 for the purpose of making a record of mitigating youth-related evidence. (*In re Cook*[, *supra,*] 7 Cal.5th [at pp.] 446-447 . . . .) We accordingly affirm without prejudice to [appellant's] filing a motion 'for a *Franklin* proceeding under the authority of section 1203.01' and *Cook*." (*Medrano, supra*, 40 Cal.App.5th at p. 963.) Section 1203.01 "provides that, postjudgment, the trial court may generate, collect, and transmit information about the defendant and the crime to the Department of Corrections and Rehabilitation." (*Cook, supra*, 7 Cal.5th at p. 447.)

*Disposition*

"The judgment is affirmed without prejudice to [appellant's] filing a motion 'for a *Franklin* proceeding under the authority of section 1203.01' and *Cook*[, *supra,* 7 Cal.5th at pp. 446-447, 460]." (*Medrano, supra*, 40 Cal.App.5th at p. 968.)

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

12

John F. McGregor, Judge

Superior Court County of Santa Barbara

_____

Steven A. Brody, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Rene Judkiewicz, Deputy Attorney General, for Plaintiff and Respondent.