Filed 3/29/22  P. v. Collins CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LOVALLE DAMON COLLINS,<br><br>Defendant and Appellant. | C093566<br><br>(Super. Ct. No. 20CF02015) |

Defendant Lovalle Damon Collins and his girlfriend were visiting a resident at a senior living apartment complex in Oroville.  At some point, their continued presence was no longer welcome and the onsite manager, G., asked them to leave.  As G. escorted them off the property, in an admittedly annoying manner, defendant punched him once in the face, causing serious injuries to his jaw.

1

Defendant was convicted by jury of one count of battery causing serious bodily injury. In a bifurcated proceeding, the trial court found defendant was previously convicted of a strike offense within the meaning of the three strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12)[1] which also triggered the five-year prior serious felony enhancement (§ 667, subd. (a)(1)). Following a successful motion to strike defendant's prior strike conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, the trial court sentenced him to serve seven years in state prison.

On appeal, defendant asserts two claims of instructional error. He contends the trial court prejudicially erred and violated his constitutional right to present a defense by omitting a bracketed portion of CALCRIM No. 3470 that would have defined "unlawful touching" in connection with his self-defense claim, and also omitting a bracketed portion of CALCRIM No. 917 that would have informed the jury that it may consider whether G. "spoke or acted in a way that threatened [defendant] with immediate harm or an unlawful touching." Because defense counsel did not object to the latter omission, defendant argues in the alternative that counsel's failure in this regard amounted to ineffective assistance of counsel. Finally, defendant asserts the cumulative prejudice flowing from these instructional errors requires reversal.

We need not decide the merits of these instructional error claims. Assuming, without deciding, that the trial court should have instructed the jury in the manner asserted in this appeal, we conclude defendant was not deprived of his constitutional right to present a defense. Moreover, viewing the assumed errors cumulatively, there is no reasonable likelihood of a more favorable result had the jury been so instructed. We therefore affirm the judgment.

---

[1] Undesignated statutory references are to the Penal Code.

## FACTS

On the morning of February 2, 2020, G. was at his apartment preparing snacks and getting ready to watch the game. He lived and worked at a senior living apartment complex as the onsite manager. One of his duties was to make sure people who were not welcome at the apartment complex left the property. Sometime before 11:00 a.m., G. was called over to a resident's apartment to perform this duty. Defendant and his girlfriend were the unwelcome visitors.

Defendant testified that he and his girlfriend were visiting a friend at the apartment complex. According to defendant, he was unaware his visit was unwelcome until G. arrived and told him to leave. Defendant "was kind of mad" and told G. he was "a guest" and would not leave unless his host "wanted [him] to leave." When the host confirmed she did not want him there, defendant grabbed his backpack and left the apartment with his girlfriend.

G. followed them through the parking lot on foot to make sure they completely left the complex's property. As G. described during his testimony, he was engaging in "kind of a yappy-dog routine," following behind them at a distance of three or four steps with his hands in his pockets while repeating: "Please leave the property. Please leave the property." G. acknowledged his goal was "to annoy them enough that they leave." Defendant acknowledged he was "getting angry and annoyed" by G.'s conduct.

Defendant's girlfriend led the walk through the parking lot. Defendant followed her, but stopped at least twice to turn around and say something to G. According to G., these comments from defendant were "derogatory in nature." Defendant testified that he simply told G.: "Get away from me. I'm leaving." Each time defendant stopped, G. also stopped and repeated: "Please leave the property." After defendant's girlfriend reached the property line, defendant turned around a final time and punched G. in the face.

According to G.'s testimony, he was still "a couple feet behind" when defendant turned around and punched him; G. "didn't see it coming." Defendant's version was very

3

different. He testified that G. took "a couple steps" to close the distance between them and was "right there in [defendant's] face." Defendant claimed he told G., "leave me alone," but G. "just kept pressing the issue," so defendant "hit him one time." Asked why he hit G., Defendant answered: "Because when he was in my face, he started waiving [*sic*] his arms around yelling Get off the property. And I -- I didn't know what he was doing. I got scared. And so I just hit him to back him up." Defendant also testified that he felt threatened by G. and believed "he was potentially going to touch" defendant at the time he punched him.

After punching G. in the face, defendant followed his girlfriend off of the property as G. pulled out his cell phone to call 911. Emergency medical personnel arrived and transported G. to the hospital. He was ultimately transported to a different hospital to see a neurosurgeon. While G.'s injuries did not require surgery, he was placed on a "broken jaw protocol" due to "several cracks to the cheekbone."

Defendant was contacted by a police officer a short distance from the apartment complex. As defendant acknowledged during his testimony at trial, he admitted punching G. in the face, but did not tell the officer that he was afraid of G. when he did so.

## DISCUSSION

Both of the instructional error claims asserted in this appeal relate to defendant's defense at trial. As already indicated, defendant claimed he punched G. in self-defense. The jury was accurately instructed on this defense with CALCRIM No. 3470. As delivered to the jury in this case, this instruction provides:

"Self-defense is a defense to battery causing serious bodily injury, simple battery, and simple assault.

"The defendant is not guilty of those crimes if the defendant used force against the other person in lawful self-defense. The defendant acted in lawful self-defense if, one, the defendant reasonably believed that he was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully; two, the defendant

4

reasonably believed that the immediate use of force was necessary to defend against that danger; and three, the defendant used no more force than what was reasonably necessary to defend against that danger.

"Belief in future harm is not sufficient [n]o matter how great or how likely the harm is believed to be. The defendant must have believed there was imminent danger of bodily injury to himself or imminent danger that he would be touched unlawfully.

"The defendant's belief must have been reasonable and he must have acted because of that belief. The defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation.

"If the defendant used more force than was reasonable, the defendant did not act in lawful self-defense. When deciding whether the defendant's beliefs were reasonable, consider all the . . . circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed.

"If the defendant's beliefs were reasonable, the danger does not need to have actually existed.

"A defendant is not required to retreat. He or she is entitled to stand his or her ground and defend himself or herself and [if] reasonably necessary to pursue an assailant until the danger has passed. This is so even if safety could have been achieved by retr[eat]ing.

"The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the People have not met this burden, you must find the defendant not guilty of battery causing serious bodily injury."

The jury was also instructed with CALCRIM No. 3472: "A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force."

5

Finally, immediately before these standard self-defense instructions, the jury was instructed with the following portion of CALCRIM No. 917: "Words, no matter how offensive, and acts that are not threatening are not enough to justify an assault or battery."

Defendant contends the trial court prejudicially erred and violated his federal constitutional right to present a defense by declining to instruct the jury with the following bracketed portion of CALCRIM No. 3470: "The slightest touching can be unlawful if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind." (CALCRIM No. 3470.) The trial court denied defense counsel's request to provide this bracketed portion of the instruction because "there was no evidence of any touching between the parties" prior to the punch that was thrown by defendant. Defendant argues there did not need to be any actual touching between the parties in order to provide this portion of the instruction, but rather, only a reasonable belief in defendant's mind that an unlawful touching was imminent. According to defendant, he "was entitled to throw a single punch in self-defense if he was in reasonable fear of suffering an imminent unlawful touching, which he testified was the case."

As a preliminary matter, defendant's argument goes too far. To be sure, if defendant reasonably believed an unlawful touching was imminent, he was entitled to use *a reasonable amount of force* to defend himself from that perceived imminent threat. He was not automatically entitled to "throw a single punch." It was for the jury to decide whether the punch defendant threw in this case was a reasonable amount of force under the circumstances. The jury was so instructed.

However, assuming the bracketed portion of CALCRIM No. 3470 should have been given, we cannot conclude such an omission deprived defendant of the right to present a defense. At most, it "adversely *affected* the defense, but it did not deprive [defendant] of the right to present one." (*People v. Humphrey* (1996) 13 Cal.4th 1073,

6

1089; see also *People v. Spencer* (1996) 51 Cal.App.4th 1208, 1221.) Indeed, the jury was already instructed with the definition of unlawful touching as part of CALCRIM No. 960's definition of simple battery: "The slightest touching can be enough to commit a battery if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind." Repeating this definition in connection with the self-defense instruction would have been helpful to the defense, but we presume the jury is fully capable of correlating instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) And defense counsel's closing argument to the jury made the very argument of which defendant now claims he was deprived, i.e., that defendant reasonably believed he was in imminent danger of being touched unlawfully by G., a "substantially larger," "taller, heavier" man, who was following closely behind defendant with his hands in his pockets, and who ultimately got very close to defendant, causing him to reasonably believe an unlawful touching was imminent. Accordingly, we conclude any assumed error in omitting the bracketed portion of the instruction must be assessed for prejudice under the standard of *People v. Watson* (1956) 46 Cal.2d 818.

The same is true with respect to defendant's second assertion of instructional error. Defendant argues the trial court should have instructed the jury with a bracketed portion of CALCRIM No. 917 that would have informed the jury that it may consider whether G. "spoke or acted in a way that threatened [defendant] with immediate harm or an unlawful touching." As already indicated, defense counsel did not object to this omission. "Failure to object to instructional error forfeits the issue on appeal unless the error affects defendant's substantial rights. [Citations.] The question is whether the error resulted in a miscarriage of justice under [*Watson*]. [Citation.]" (*People v. Anderson* (2007) 152 Cal.App.4th 919, 927; see also *People v. Battle* (2011) 198 Cal.App.4th 50, 64-65.) But even without the failure to object, as with defendant's first instructional error

claim, we cannot conclude such an omission deprived defendant of the right to present a defense. Thus, *Watson* would be the appropriate standard in any event.

Assuming, without deciding, that both of defendant's instructional error claims have merit, and viewing these assumed errors cumulatively, we conclude there is no reasonable likelihood of a more favorable result had the jury been instructed with the bracketed portions of CALCRIM Nos. 3470 and 917.

First, the trial in this case was largely a credibility contest between defendant and G. The jury appears to have believed G.'s account of events. That version of the interaction in the parking lot does not support a self-defense claim.

Second, even if the jury believed defendant's account of events, specifically, that G. closed the distance between them and was waving his arms and yelling in defendant's face immediately before defendant threw the punch, this does not mean that punch was thrown in self-defense. If those facts were believed, the jury might well have concluded defendant reasonably believed unlawful contact was imminent. However, as we have explained, the jury was already informed that unlawful contact could mean "[t]he slightest touching . . . if it is done in a rude or angry way," and that such contact could occur "through . . . clothing" and did not need to "cause pain or injury of any kind." So the jury already had what it needed to make this assessment. This lends some support to the conclusion that the jury simply did not believe defendant's version of events. But even assuming the jury would have concluded defendant reasonably believed an unlawful touching was imminent had this language been repeated in CALCRIM No. 3470, we cannot conclude there is a reasonable probability the jury would have reached the separate and equally important conclusion that punching G. in the face was a reasonable amount of force to use in these circumstances.

Finally, while the bracketed portion of CALCRIM No. 917 would have told the jury to specifically consider whether G. "spoke or acted in a way that threatened [defendant] with immediate harm or an unlawful touching," the jury was already told to

8

"consider *all the . . . circumstances* as they were known to and appeared to the defendant . . . ." (Italics added.) These circumstances included G.'s words and actions in the parking lot. Nor does the remainder of CALCRIM No. 917 suggest otherwise. It simply states: "Words, no matter how offensive, and acts that are not threatening, are not enough to justify an assault or battery." This is an accurate statement of the law. And it does not suggest that the jury should not consider G.'s words or actions, as part of the totality of circumstances, in determining whether defendant acted in self-defense. We therefore presume the jury considered G.'s words and actions in the parking lot and concluded they either did not support a reasonable belief in the need to use force in self-defense, or if they did, the amount of force used by defendant was not reasonable under the circumstances.

Because the claimed instructional errors did not prejudice defendant, either individually or cumulatively, we must affirm the judgment entered against him in this case.

DISPOSITION

The judgment is affirmed.

/s/
HOCH, Acting P. J.

We concur:


/s/
KRAUSE, J.


/s/
EARL, J.

9