Filed 2/22/24  P. v. Ward CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B326448 |
| Plaintiff and Respondent, | (Super. Ct. No. SA066108) |
| | (Los Angeles County) |
| v. | |
| JAMES VERNON WARD, | |
| Defendant and Appellant. | |

James Vernon Ward appeals the denial of his petition for resentencing under Penal Code section 1172.6[1].  He contends the trial court erred by conducting the evidentiary hearing without

---

[1] All further undesignated statutory references are to the Penal Code.  Appellant filed his petition under former section 1170.95.  Effective June 30, 2022, the Legislature renumbered section 1170.95 as section 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.)  We refer to the statute throughout as section 1172.6.

him present.  We will affirm because as the actual killer he was not entitled to an evidentiary hearing.

FACTS AND PROCEDURAL HISTORY[2]

Appellant lived with his wife Deshawn Ward, and three children:  his wife's six-year-old son J. and two-year-old daughter K., and her and appellant's infant son J.W.  On the morning of September 7, at approximately 5:00 a.m., Mrs. Ward awoke and left for work.  Later that morning, appellant walked J. to school accompanied by K. and J.W.  At 1:00 p.m., appellant telephoned his wife and reported that K. and J.W. were sleeping.  Shortly thereafter, appellant telephoned his wife and told her K. would not wake up.  At his wife's direction, appellant called 911.  Police reached the home at 2:05 p.m.  K. was lying on the floor.  An officer could not find a pulse and began performing CPR.  Paramedics arrived two or three minutes after the police.

K. was taken to a hospital where she was treated by emergency room physician Dr. Covington, who restarted K.'s heart and placed her on a ventilator.  Dr. Covington's examination revealed that K.'s abdomen was large and rigid, her rectum was prolapsed, her vaginal opening was larger than would be expected in a two-year-old, and she did not see a hymen.  Dr. Covington concluded that K.'s injuries were the result of trauma and reported to the police that K. had been abused.

---

[2] The following summary of the factual and procedural background is drawn from this court's unpublished opinion in *People v. Ward* (Apr. 25, 2013, B231332) [nonpub. opn.].  We previously granted appellant's unopposed request for judicial notice of the record in his direct appeal.  (Evid. Code, § 452.)  We provide this background to give context to our analysis of whether the jury instructions and verdicts foreclose the existence of a prima facie case.

K. was sent to another hospital for surgery. Pediatric surgeon Dr. Sydorak concluded that K. had visible signs of abuse and was critically ill and near death. Dr. Sydorak opined that K.'s injuries had been sustained within one to six hours before the operation. K. was removed from the ventilator, and died on September 9, 2007.

On September 11 and 12, Los Angeles County Deputy Medical Examiner Dr. Whiteman performed an autopsy of K. Dr. Whiteman found organ damage and other injuries, and he opined that the cause of death was multiple traumatic injuries, including injuries to her abdomen, rib cage, and head. Dr. Whiteman concluded that most of K.'s injuries, including bruises inside her rectum, occurred between six and 12 hours before K. was placed on a ventilator at the hospital.

Dr. Heger participated in the autopsy and testified that acute trauma extended around and across the base of her hymen and in her rectum. She concluded that the injuries to K.'s hymen were "fairly recent," and that K. had been penetrated at least once in the anus and at least once in the vagina. Dr. Heger could not determine what object made the penetrations.

A jury convicted appellant of the first degree murder of K. while engaged in the commission of sexual penetration (rape by instrument) (§§ 187, subd. (a), 289); count 1), assault on a child causing death (§ 273ab; count 2), and child abuse (§ 273a, subd. (a); count 3). As to count 1, the jury found true the special circumstance that the murder was committed during the commission of a rape by instrument. (§§ 190.2, subd. (a)(17)(k), 289.) Appended to count 3 and also found true was the allegation that appellant willfully harmed or injured a child resulting in the child's death (§ 12022.95). Appellant was sentenced to life without possibility of parole for the murder, plus a consecutive

3

three-year term for child abuse and four-year term for child abuse pursuant to section 12022.95. We affirmed the judgment in *People v. Ward, supra,* B231332.

Appellant petitioned for resentencing under section 1172.6 and requested appointment of counsel. The trial court granted the request for counsel and each side submitted briefs. It found appellant's petition made a prima facie case for relief, ordered additional briefing, and scheduled an evidentiary hearing. At an evidentiary hearing for which appellant was not present, the court denied the petition. The court found appellant's record of conviction established he was K.'s actual killer beyond a reasonable doubt. The court noted the jury was never instructed on the natural and probable consequences doctrine or any theory of aiding and abetting.

## DISCUSSION

Appellant contends the trial court prejudicially erred when it denied his resentencing petition at the evidentiary hearing without him present. (See *People v. Basler* (2022) 80 Cal.App.5th 46, 58.) We conclude that because the record of conviction conclusively establishes the jury convicted appellant as the actual killer, any error in holding an evidentiary hearing in appellant's absence was harmless under any standard. (See *People v. Garcia* (2022) 82 Cal.App.5th 956, 973 (*Garcia*); *People v. Hurtado* (2023) 89 Cal.App.5th 887, 893 ["the harmless error doctrine provides a reasonable method to avoid protracted hearings in past cases that are final and should stay that way"].)

*Section 1172.6*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) narrowed the felony-murder rule's scope. The bill added section 189, subdivision (e) (Stats. 2018, ch. 1015, § 3; see *People v. Strong* (2022) 13 Cal.5th 698, 707-708

4

(*Strong*)), which provides that defendants are liable on a felony-murder theory only if they (1) were the actual killer; (2) were not the actual killer but, with the intent to kill, aided and abetted the actual killer in committing first degree murder; or (3) were a major participant in the underlying felony and acted with reckless indifference to human life.  (See *Strong*, at p. 708.)

Senate Bill 1437 also established a procedure for defendants convicted under prior law to petition for relief. (§ 1172.6.)  Under section 1172.6, the petition must contain a declaration that all eligibility requirements are met, including that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (a)(3).)  After receiving a compliant petition, the trial court "hold[s] a hearing to determine whether the petitioner has made a prima facie case for relief."  (§ 1172.6, subd. (c).)  Upon a successful prima facie showing, the court issues an order to show cause and conducts an evidentiary hearing.  (§ 1172.6, subds. (c), (d).)  At that hearing, the prosecution must prove beyond a reasonable doubt that the petitioner is guilty of murder under the law as amended by Senate Bill No. 1437.  (*Ibid.*; see also *Strong*, *supra*, 13 Cal.5th at p. 709.)

The prima facie inquiry is "limited."  (*People v. Lewis* (2021) 11 Cal.5th 952, 971.)  The court accepts the petitioner's factual allegations as true but may consider the record of conviction, which includes jury instructions, closing argument, verdict forms, and prior appellate opinions.  (*Ibid.*; see also *People v. Lopez* (2022) 78 Cal.App.5th 1, 13.)  However, "the probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers.'"  (*Lewis*, at p. 972.)  In relying on the record of conviction, the court "should

5

not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Ibid*.)

*Appellant is Ineligible for Relief as a Matter of Law*

The record of conviction conclusively demonstrates the jury convicted appellant as the actual killer. Appellant is, therefore, ineligible for relief under section 1172.6 as a matter of law.

At trial, the prosecution proceeded solely on a felony-murder theory with appellant as the lone perpetrator. The court instructed only on first degree murder under a felony-murder theory. The court did not instruct on liability as an aider and abettor, accomplice, or major participant in the underlying felony who acted with reckless indifference to human life. Nor did the court instruct on malice or the natural and probable consequences doctrine.

While the felony-murder conviction did not require a jury finding that appellant was the actual killer, the jury's verdicts on both the section 12022.95 allegation and section 273ab charge cement appellant's actual killer status. As to section 12022.95, the court instructed: "If you find the defendant guilty of the charged crime of Penal Code section 273a, subdivision (a) in Count 3, then you must determine whether the following allegation pursuant to Penal Code section 12022.95 is true or not true. [¶] That, under circumstances or conditions likely to produce great bodily harm or death, the defendant willfully caused or permitted any child to suffer that resulted in the child's death or inflicted upon the child unjustifiable physical pain or injury that resulted in the child's death; or [¶] [t]hat, having care or custody of any child under circumstances or conditions likely to produce great bodily harm or death, the defendant willfully caused or permitted that child to be injured or harmed, and that injury or harm resulted in the child's death."

6

A true finding under this instruction theoretically allows for the possibility that appellant only permitted or indirectly caused, without personally perpetrating, an injury or harm resulting in K.'s death. However, the verdict form states: "We further find [true] the allegation that the defendant willfully harmed or injured the child, which harm or injury resulted in the child's death, within the meaning of Penal Code Section 12022.95." The plain meaning of this language confirms the jury found appellant personally harmed or injured K., which resulted in K.'s death. The record supports this conclusion. Personal perpetration of harm or injury is consistent with the jury's finding that appellant "committed the murder of [K.] while he was engaged in the commission of the crime of forcible sexual penetration . . . ." Moreover, the prosecution argued appellant's physical blows during a beating caused K.'s death. The defense disagreed but did not argue appellant only permitted or indirectly caused a fatal harm or injury without perpetrating it. In finding true the section 12022.95 allegation, therefore, the jury found appellant personally perpetrated a harm or injury resulting in K.'s death. Only the actual killer could do so.

The section 273ab conviction further identifies appellant as the actual killer. That conviction required a finding appellant committed an assault upon K. "by means of force that to a reasonable person would be likely to produce great bodily injury." (CALJIC No. 9.36.5.)[3] The jury necessarily concluded appellant's

---

[3] On the section 273ab charge, the court instructed that proof of the following elements was necessary: "1. A person had the care or custody of a child under eight years of age; [¶] 2. That person committed an assault upon the child; [¶] 3. The assault was committed by means of force that to a reasonable person

7

assault resulted in K.'s death. Accordingly, by finding appellant committed the section 273ab "offense of child abuse homicide," the jury determined appellant was K.'s actual killer. (*People v. Wyatt* (2010) 48 Cal.4th 776, 780.)

Appellant argues the record of conviction does not establish he was the actual killer. Appellant catalogs evidence of K.'s preexisting medical conditions and accident history, as well as injuries potentially produced during medical treatment. Appellant contends the jury, as instructed on causation, could have convicted based on proximate causation without finding appellant was K.'s actual killer. We disagree.

The court instructed on causation with CALJIC Nos. 3.40 and 3.41. CALJIC No. 3.40, the more general instruction, provided: "To constitute the crimes of Penal Code section 187(a) in Count 1 and Penal Code section 273ab in Count 2 and the allegation in Count 3 pursuant to Penal Code section 12022.95, there must be in addition to the death an unlawful act which was a cause of that death. [¶] The criminal law has its own particular way of defining cause. A cause of the death is an act that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act the death and without which the death would not occur."

CALJIC No. 3.41 provided specific direction on concurrent causes: "There may be more than one cause of the death. When the conduct of two or more persons contributes concurrently as a cause of the death, the conduct of each is a cause of the death if that conduct was also a substantial factor contributing to the result. A cause is concurrent if it was operative at the moment of

would be likely to produce great bodily injury; and [¶] 4. The assault resulted in the death of the child." (CALJIC No. 9.36.5.)

8

the death and acted with another cause to produce the death. [¶] If you find that the defendant's conduct was a cause of death to another person, then it is no defense that the conduct of some other person contributed to the death."

Our Supreme Court recently affirmed these instructions in clarifying proximate causation for concurrent cause cases. (*People v. Carney* (2023) 14 Cal.5th 1130, 1138-1142.) When evidence of concurrent causes exists, to be a proximate cause, a defendant's conduct must be a substantial factor contributing to a victim's death. (*Carney* at p. 1138, 1142; see also CALJIC No. 3.41.) The death must also be foreseeable—that is, the "'"direct, natural and probable consequence"'"' of the defendant's conduct. (*Carney* at pp. 1138, 1142; see also CALJIC No. 3.40.)

Instructed in line with these principles, the jury could have found appellant's conduct "resulted in" K.'s death if it was a substantial factor contributing to K.'s death, not the sole cause thereof. The jury may have believed K.'s preexisting conditions or medical injuries contributed to the death as well. In that case, the question is whether a defendant who commits an act that operates as such a proximate cause, along with concurrent medical causes, is an actual killer. We conclude yes.

Longstanding precedent establishes that a victim's preexisting medical condition does not relieve a defendant of liability for murder so long as the condition "'is not the *only* substantial factor bringing about [the] death.'" (*People v. Catlin* (2001) 26 Cal.4th 81, 155.) Likewise, inadequate medical treatment has not traditionally discharged murder liability unless "the maltreatment is the sole cause of death and hence an unforeseeable intervening cause." (*People v. Roberts* (1992) 2 Cal.4th 271, 312.) As explained in *People v. Garcia, supra*, 82 Cal.App.5th 956, nothing in Senate Bill No. 1437 evinces a

9

legislative intent to modify longstanding concurrent causation principles. (*Id.* at p. 967.) Instructed under those principles, the jury found appellant's conduct proximately caused K.'s death, even if preexisting or ensuing medical factors may have also contributed. The jury's finding suffices to identify appellant as the actual killer. (See *id.* at pp. 970-971 [because the defendant's acts were a substantial factor in bringing about the victim's death, the defendant "'personally killed'" and was the "'actual killer'" under section 189].) We fail to see how or why external factors like a preexisting medical condition or negligent medical treatment would routinely absolve an actual killer.

Appellant also contends a recent accident K. suffered "provides precedent" for a similar accident possibly contributing to her death. Even granting this possibility, such an accident would simply function as another concurrent cause along with appellant's conduct. Furthermore, "the primary purpose of the felony-murder rule . . . is '"to deter felons from killing negligently or accidentally by holding them strictly responsible for the killings they commit."' [Citations.]" (*Garcia, supra,* 82 Cal.App.5th at p. 969.) Given this core purpose, an accident, like a concurrent medical cause, does not discharge appellant as the actual killer. In short, the possible concurrent causes in this case do not undermine the jury's finding that appellant's acts— namely, his assault and perpetration of harm or injury—were at least a substantial factor contributing to K.'s foreseeable death. That finding establishes appellant as K.'s actual killer.

Finally, appellant's reliance upon *People v. Vang* (2022) 82 Cal.App.5th 64 (*Vang*) is misplaced. In *Vang*, the victim died after jumping from a moving car to escape her kidnapper. (*Id.* at pp. 79-80.) *Vang* held an actual killer must personally commit the homicidal act. (*Id.* at p. 80.) The trial court's instructions

allowed the jury to convict based on general causation principles, even if it did not find the defendant personally committed the homicidal act. (*Id*. at p. 91.) *Vang* reversed the first degree felony-murder conviction and vacated the special circumstance finding because "the evidence [did] not permit any inference that defendant was the direct cause of [the victim's] death." (*Ibid*.)

Appellant's case is distinguishable. The jury found appellant personally perpetrated a harm or injury resulting in K.'s death, as well as an assault upon K. resulting in her death. Thus, appellant's situation diverges from *Vang*, where the victim's death resulted from her own volitional act of jumping from a moving car. Although appellant criticizes the evidence of his acts as circumstantial, the species of evidence is irrelevant and does not undermine the jury's findings. (Cf. *People v. Anderson* (2007) 152 Cal.App.4th 919, 930.)

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

CODY, J.

We concur:

GILBERT, P. J.

YEGAN, J.

11

Michael E. Pastor, Judge
Superior Court County of Los Angeles
_____

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Daniel C. Chang, Deputy Attorney General, for Plaintiff and Respondent.